[No. B021961. Second Dist., Div. Two. June 3, 1988.]

SINCLAIR & VALENTINE COMPANY, INC., Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.

COUNSEL

Frederick L. McKnight, Donald L. Cornwell and Paul H. Roeder for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, Orry P. Korb, Deputy County Counsel, Albert Ramseyer, Stephen A. Seideman and Richard H. Levin for Defendants and Appellants.

OPINION

GATES, J.—The instant appeals are taken from a summary judgment quieting title to a parcel of real property in favor of plaintiff Sinclair & Valentine Company and cancelling certain deeds purporting to convey the property first from defendant Tax Collector of the County of Los Angeles[1] to the State of California and then from the state, acting by and through the County, to defendants Stephen Landau and Reid Alexander (hereinafter defendants).

---

[1] Defendant County of Los Angeles and its tax collector shall henceforth be referred to collectively as the County.

■ ■■■ In its appeal the County does not contest the propriety of the judgment insofar as it restores plaintiff's title to the property, but rather merely challenges that portion which requires it to pay plaintiff's attorney's fees in the amount of $30,000 pursuant to 42 United States Code section 1988.[2] On the other hand, plaintiff asserts the trial court abused its discretion by "arbitrarily halving" its requested attorney's fee award and disallowing its nonstatutory out-of-pocket costs in their entirety.

Only defendants assail the merits of the judgment, per se, contending: "[I.] Revenue and Taxation Code § 3711 bars any attack on the deed to [defendants] on grounds other than a violation of [plaintiff's] constitutional rights. [II.] The sale of the property to [defendants] was not constitutionally defective as the minimum requirements of due process were satisfied."

The relevant facts are undisputed. In December 1972, Wheelabrator-Frye, Inc., by means of a grant deed describing it as the "successor in interest to Frye Industries, Inc. by virtue of a statutory merger," conveyed to plaintiff two parcels of unimproved real property located in the City of Santa Fe Springs. However, the County had actually assigned to the two parcels described in the deed memorializing this intercorporate transfer not two, but three, separate identification numbers for purposes of assessing real property taxes, i.e., one parcel carried numbers 8069-007-009 and 8069-013-014, while the other was simply 8069-007-010.[3]

In March 1973, plaintiff relocated its principal offices from New York to Ohio. For reasons which are not entirely clear, while the secured tax rolls relating to parcel 009 were updated to reflect this and subsequent changes in plaintiff's address, as well as the fact that Frye Industries was no longer the record owner of the property, those relating to parcel 010, the subject of this litigation, were not. Consequently, the assessments on parcel 010 were mailed to Frye Industries, Inc., in care of Sinclair & Valentine, at a New York address previously shared by both businesses. Nonetheless, for a peri-

---

[2] Section 1988 provides in relevant part: "In any action or proceeding to enforce a provision of section[ ] 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Section 1983, insofar as is pertinent, reads: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

State courts possess jurisdiction concurrent with federal courts to hear claims under section 1983, as well as to consider subsequent attorney's fee petitions under section 1988. (*Maine* v. *Thiboutot* (1980) 448 U.S. 1, 10 [65 L.Ed.2d 555, 563, 100 S.Ct. 2502].)

[3] We shall hereafter refer to these three parcels as 009, 010 and 014.

od of 30 months the bills were forwarded to and paid by plaintiff. However, once the post office ceased providing this service, they were returned to the County marked "undeliverable." By contrast, the tax bills on parcel 009 were sent to plaintiff at each of its various addresses and were duly paid.

Because of the failure to receive and pay the assessment for the 1976-1977 fiscal year, parcel 010, in accordance with statutory procedures then in effect, was sold to the State of California on June 30, 1977. When these taxes thereafter remained delinquent for an additional five years, the property was deeded to the State on July 1, 1982. Notice of this latter event, which had been mailed to Frye Industries in New York, was, of course, returned, as had been the earlier tax bills, with the notation "undeliverable."

Subsequently the County conducted a title search which revealed that plaintiff, not Frye Industries, was the record owner of parcel 010. Before the property was finally sold at public auction in February 1983 to defendants, the County, inexplicably, purported to inform both Frye Industries and plaintiff of the proposed sale by sending notices thereof to the same New York address it had futilely utilized previously. As a consequence, and quite anticipatably, these documents were also returned undelivered.

No further effort was made to determine plaintiff's correct address, either by simply checking the tax collector's own name index, or by referring to a local telephone directory for the Santa Fe Springs area, though the County readily conceded that had it done so, it would have discovered the address of plaintiff's corporate headquarters in Iowa, where it had moved in June 1979, as well as that of its local plant, which was situated immediately adjacent to parcel 010 in Santa Fe Springs.

As a result, plaintiff received no notice of the sale to defendants until it was contacted in March 1983 by a company seeking to act as a "collection agent" on its behalf in connection with the " 'excess proceeds' that resulted from a state tax sale of property in Los Angeles County." The following month plaintiff notified the County of its belief that the property in question had been redeemed in January 1981. After investigating the matter, however, the County determined the redemption thus referred to, in fact, had related to parcel 014 which, equally inexplicably, had not even been assessed to Frye Industries but to that entity's predecessor in interest at a New Jersey address. Having failed to gain relief, plaintiff filed the instant action on July 19, 1983, well within the one-year statute of limitations period provided by sections 177 and 3725 of the Revenue and Taxation Code.

■ It is manifest, and the County understandably does not contend otherwise, that it completely failed here to "make a reasonable effort to obtain the name and last known mailing address of parties of interest," as required by section 3701 of the Revenue and Taxation Code.[4] This dereliction was not excused by Revenue and Taxation Code section 3711, which states: "Except as against actual fraud, the deed duly acknowledged or proved is conclusive evidence of the regularity of all proceedings from the assessment of the assessor to the execution of the deed, both inclusive." Such curative statutes are simply "conclusive evidence that all taxing procedures *other than those affecting jurisdiction consonant with due process* ha[ve] been complied with." (*Philbrick* v. *Huff* (1976) 60 Cal.App.3d 633, 649 [131 Cal.Rptr. 733]; italics added.)

■ It is well-settled that a person's property may not be taken without due process of law and that a fundamental requisite of such process is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of proceedings which could result in a deprivation of property so as to afford them an opportunity to be heard. (*Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 873, 70 S.Ct. 652]; *Banas* v. *Transamerica Title Ins. Co.* (1982) 133 Cal.App.3d 845, 850 [184 Cal.Rptr. 262].)

In *Mennonite Board of Missions* v. *Adams* (1983) 462 U.S. 791 [77 L.Ed.2d 180, 103 S.Ct. 2706], our nation's highest court, applying the principle set forth in *Mullane* to the field of ad valorem property taxes, held: "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable. . . ." (*Id.,* at p. 800 [771 L.Ed.2d at p. 188]; italics in original.) In so doing, the court found publication and posting to be inadequate means of achieving the requisite notice inasmuch as they "are designed

---

[4] This section at all times herein relevant specified: "After receiving the written authorization of the Controller, and not less than 21 days nor more than 28 days before the proposed sale, the tax collector shall send notice of the proposed sale by registered mail to the last known mailing address, if available, of parties of interest, as defined in Section 4675. The contents of the notice shall include the date, time, and place of the proposed sale, the amount required to redeem prior to the time of sale, and information regarding the rights of parties of interest to claim excess proceeds, as defined in Section 4674, if the property is sold and excess proceeds results from such sale.

"The tax collector shall make a reasonable effort to obtain the name and last known mailing address of parties of interest.

"The validity of any sale under this chapter shall not be affected if the tax collector's reasonable effort fails to disclose the name and last known mailing address of parties of interest or if a party of interest does not receive the mailed notice."

primarily to attract prospective purchasers to the tax sale" and, as such, "are unlikely to reach those who, although they have an interest in the property, do not make special efforts to keep abreast of such notices. [Citations.]" (*Id.,* at p. 799 [771 L.Ed.2d at p. 187].) It also rejected the notion that a party's ability to take steps to safeguard its interest relieves the State of its basic constitutional obligation to provide personal service or mailed notice. (*Ibid.* [77 L.Ed.2d at p. 188].)

To the degree certain earlier California cases contain language to the effect that " 'publication of notice is all of the "due process" notice to which the delinquent taxpayer is entitled,' . . . [under the theory] that annually assessed ad valorem property taxes are well known to the property owner and therefore he has an obligation to be on alert to protect his rights against delinquency concerning those taxes" (*Chesney* v. *Gresham* (1976) 64 Cal.App.3d 120, at p. 129 [134 Cal.Rptr. 238], and cases cited therein), any attempt to apply such broad pronouncements in the instant factual setting would obviously conflict with the foregoing standard. Consequently, they cannot be relied upon to resolve the claim here under review.

In the matter currently before us, the County did, of course, mail plaintiff notice pending the sale of parcel 010 at public auction. However, it did so with full knowledge that such notice would be undeliverable as addressed. It has long been recognized that "when notice is a person's due, process which is a mere gesture is not due process. . . ." (*Mullane* v. *Central Hanover Tr. Co., supra,* 339 U.S. at p. 315 [94 L.Ed.2d at p. 874].) Although actual notice is not required, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. . . ." (*Id.,* at p. 315.) This being so, we can but uphold the trial court's determination, which, as noted, the County does not contest, that the County's failure, under the circumstances here present, to undertake the relatively modest administrative burden required to discover plaintiff's whereabouts before proceeding with a sale which would irrevocably extinguish its legally protected property interest constituted a violation both of California statutory law and the due process clause of the Fourteenth Amendment.

■  Notwithstanding this conclusion, however, plaintiff has not demonstrated that it is entitled to attorney's fees under 42 United States Code section 1988. That is to say, although it appears taxpayers may, in state courts at least, seek the recovery of damages under 42 United States Code section 1983 to redress the unconstitutional administration of a state or local tax system (see *Fair Assessment in Real Estate Assn.* v. *McNary* (1981) 454 U.S. 100, 103-104 [70 L.Ed.2d 271, 274-275, 102 S.Ct. 177]), plaintiff neither alleged in its complaint nor demonstrated at the hearing on its

summary judgment motion, that the County, through the implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or "pursuant to governmental 'custom' [which had] not received formal approval through the body's official decisionmaking channels," deprived it of rights protected by the Constitution. (*Monell* v. *New York City Dept. of Social Services* (1978) 436 U.S. 658, 690-691 [56 L.Ed.2d 611, 635, 98 S.Ct. 2018].)

On the contrary, uncontroverted evidence established that prior to the sale of property at public auction, it was the County's official policy and custom to attempt to procure an assessee's correct address by examining the latest tax roll, the name index, registrar of voters lists, the telephone directory and any correspondence relating to the property in question. The mere fact that unidentified county personnel, without the knowledge or approval of their superiors, failed to abide by these procedures in this individual case would not render the County liable. (*Id.,* at pp. 691-692 [56 L.Ed.2d at p. 636]; *Kreutzer* v. *County of San Diego* (1984) 153 Cal.App.3d 62, 70 [200 Cal.Rptr. 322]. See also Annot. (1987) 81 A.L.R.Fed. 549, 558, 566-569, §§ 2[a], 4[a].)

The judgment is reversed insofar as it awards attorney's fees to plaintiff; in all other respects it is affirmed. The County is entitled to costs on appeal. Plaintiff Sinclair & Valentine and defendants Landau and Alexander shall bear their own costs and shall contribute equally to those incurred by the County.

Roth, P. J., and Compton, J., concurred.