[No. B037426. Second Dist., Div. One. Oct. 23, 1989.]

CRALAND, INC., Plaintiff and Appellant, v.
STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Knapp, Petersen & Clarke and Bruce E. Mitchell for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Richard W. Bakke, Deputy Attorneys General, De Witt W. Clinton, County Counsel, and Albert Ramseyer for Defendants and Respondents.

**OPINION**

**ORTEGA, J.**—Plaintiff Craland, Inc., appeals from the judgment of dismissal following the sustaining of a demurrer without leave to amend against its second amended complaint for fraudulent breach of contract and breach of implied warranty. We conclude plaintiff's remedies as a purchaser

at a public sale of tax-defaulted real property against defendants State of California (State) and County of Los Angeles (County) are limited to those provided by statute. Affirmed.

### BACKGROUND

At a January 1981 tax sale, plaintiff successfully bid on approximately 36 acres of tax-defaulted real property located in the County. Plaintiff, who intended to either develop or resell the land for a profit, paid about $312,343 for the property.

However, plaintiff filed written claims against the State and County to rescind the purchase in October 1982, alleging the land was worthless due to Subdivision Map Act violations. Plaintiff requested monetary damages of $746,100, including $405,142 in lost profits. After both governmental entities denied the claim and amended claim, plaintiff instituted this action in May 1983.

The original complaint made no reference to landslides on the property. It was only in February 1984, while reviewing a prior subdivision map application, that plaintiff discovered the property had a "landslide defect." At the same time, plaintiff also reviewed a March 1972 "Tentative Land Division Review" prepared by the engineering geology section of the department of county engineer design division, which stated in relevant part: "Prior to approval of tentative or parcel maps: An engineering geologic report will be required since the tract is underlain by a large landslide, according to Calif. Div. Mines & Geology."

These discoveries led plaintiff to file additional written claims against the State and County in March 1984, contending they had known of the landslide but failed to disclose it at the January 1981 tax sale. Asserting it would not have purchased the property had it known of the landslide, plaintiff sought rescission of the contract and damages in excess of $2.3 million, including lost profits of $2 million.

After both defendants rejected plaintiff's 1984 claims, plaintiff filed a first amended complaint in August 1984. The amended pleading added allegations based on defendants' failure to disclose the existence of the landslide.

Attempting to mitigate its damages, plaintiff sold the property to the developer of adjoining land in December 1987 for $700,000, more than twice the sum which plaintiff had paid for the property seven years earlier. Plaintiff eventually dropped the allegations concerning the Subdivision Map Act violations from a second amended complaint filed in April 1988. The

second amended pleading seeks compensatory damages for lost profits of about $1 million due to the existence of the landslide.

The trial court sustained defendants' demurrers to the second amended complaint without leave to amend. Plaintiff appeals from the judgment (order of dismissal).

## ISSUE

■ Although plaintiff raises numerous contentions on appeal, we find the following issue to be dispositive: In the absence of a statute, are the State and County contractually liable to the purchaser of tax-defaulted real property at a public tax sale for lost profits that would have been realized but for the existence of a landslide underlying the property?

## DISCUSSION

### A. Tax Sale Proceedings

■ A tax sale proceeding is wholly a creature of statute. Because a tax sale is imposed against an adverse party without his consent, "every essential step leading to the execution of a tax deed must be strictly followed." (*Paul* v. *Los Angeles County Flood Control Dist.* (1974) 37 Cal.App.3d 265, 275 [112 Cal.Rptr. 274].)

The sale in this case occurred prior to the 1984 amendments to the Revenue and Taxation Code sections governing the tax sale procedure. (Stats. 1984, ch. 988, § 10; Rev. & Tax. Code § 3351 et seq.)[1] Under the former procedure, the property was sold to the State by operation of law following the owner's failure to pay the property tax, and became "tax-sold property." (Former Rev. & Tax. Code, § 126.) This designation, however, neither conveyed title nor disturbed the owner's possession; its primary effect was to commence the running of a five-year redemption period during which the owner could redeem the property. (See *Paul* v. *Los Angeles County Flood Control Dist., supra,* 37 Cal.App.3d at p. 267, fn. 2; 9 Witkin, Summary of Cal. Law (9th ed. 1989) Taxation, § 214, p. 267.) Following the expiration of the five-year redemption period and the publication and mailing of the tax collector's notice of intent to deed the property to the State, the tax-sold property became "tax-deeded" to the State. (Former Rev. & Tax. Code, §§ 3511, 3513, 127.)

Under the new language, the terms "tax-sold" and "tax-deeded" are no longer used. Instead of a sale to the state, there is a declaration of default,

---

[1] Those changes do not affect our determination of this matter.

after which the property becomes "tax-defaulted property." (Rev. & Tax. Code, §§ 3436, 3439, 126.) The five-year redemption period commences to run upon the declaration of default. (Rev. & Tax. Code, §§ 126, 3691.) For the sake of clarity and consistency, we use the designation "tax-defaulted property" throughout this opinion.

The tax-defaulted property becomes subject to sale following the expiration of the redemption period, and a sale must be attempted within two years thereafter. (Rev. & Tax. Code, §§ 3691, 3692.) The sale must first be approved by the county board of supervisors and the state controller. (Rev. & Tax. Code, § 3694.)

When, as in this case, the sale is to private persons by public auction (Rev. & Tax. Code, § 3691 et seq.), the property is sold to the highest bidder. The minimum purchase price is 25 percent of fair market value (Rev. & Tax. Code, § 3698.5), and the purchaser must meet the minimum price specified by the board of supervisors except in the case of a partial redemption (Rev. & Tax. Code, § 3706).

The proceeds from the tax sale are distributed according to statute. (Rev. & Tax. Code, § 4672 et seq.) Any party of interest in the property may file a claim for excess proceeds within one year following the recordation of the tax deed to the purchaser. (Rev. & Tax. Code, § 4675.)

The tax deed passes title free of all encumbrances except tax liens or assessments, easements, water rights, and recorded restrictions. (Rev. & Tax. Code, § 3712.) In the absence of actual fraud, the duly acknowledged or proved tax deed is conclusive evidence of the regularity of the tax sale proceedings. (Rev. & Tax. Code, § 3711.) The tax sale furthers the public interest by collecting the taxes owed upon the property, and also returning the property to the tax rolls by placing it into the hands of those who do pay their taxes. (See *Anglo Cal. Nat. Bank* v. *Leland* (1937) 9 Cal.2d 347, 352 [70 P.2d 937].)

B. *Purchaser's Remedies*

Preliminarily, we note plaintiff does not contend defendants violated any statutory requirement leading to the execution of the tax deeds to the property. ▮▮▮ What plaintiff asserts is that defendants breached their contractual "duty, as knowing sellers, to disclose . . . the landslides . . . prior to [plaintiff's] purchase." Plaintiff, citing *Herzog* v. *Capital Co.* (1945) 27 Cal.2d 349 [164 P.2d 8] and *Lingsch* v. *Savage* (1963) 213 Cal.App.2d 729 [29 Cal.Rptr. 201, 8 A.L.R.3d 537], neither of which is a tax-sale case,

contends defendants owed the same duty as do ordinary sellers of real property to disclose all known, hidden defects.

■ It is settled law that defendants County and State are immune from tort liability arising from any misrepresentations made in conjunction with the tax sale of the property. (Gov. Code, §§ 818.8, 860.2;[2] see *Mitchell* v. *Franchise Tax Board* (1986) 183 Cal.App.3d 1133, 1136-1137 [228 Cal.Rptr. 750]; *Nadon* v. *City of Los Angeles* (1980) 104 Cal.App.3d 487, 489 [163 Cal.Rptr. 582].) But as plaintiff correctly points out, these immunity statutes have no effect on the contractual liabilities of public entities. (Gov. Code, § 814;[3] see *Arthur L. Sachs, Inc.* v. *City of Oceanside* (1984) 151 Cal.App.3d 315, 320 [198 Cal.Rptr. 483].)

■ Because the sale of tax-delinquent property to a private purchaser at a tax sale constitutes a contract between the purchaser and the state (see *Anglo Cal. Nat. Bank* v. *Leland, supra,* 9 Cal.2d at p. 352), plaintiff contends defendants are bound to disclose known, hidden defects just like any other private sellers of land. Plaintiff cites Civil Code section 1635, which states: "All contracts, whether public or private, are to be interpreted by the same rules, except as otherwise provided by this Code."

Although a tax sale admittedly constitutes a contract, the California courts, with but one exception, have not applied ordinary contract law to determine the rights of the purchaser against the seller. The overwhelming body of decisional law governing tax sales establishes that the State and County, absent a representation to the contrary, do not warrant the validity or regularity of tax sale proceedings. (*Routh* v. *Quinn* (1942) 20 Cal.2d 488, 490-491 [127 P.2d 1, 149 A.L.R. 215].) For this reason, neither the State nor the County owes any nonstatutory duty of care with respect to the purchaser. (*Id.* at p. 492.)

In *Routh, supra,* 20 Cal.2d 488, the owner of personal property wrongfully sold by the county tax assessor recovered a money judgment for wrongful conversion against the plaintiff purchaser. The purchaser in turn sought damages against the assessor, his deputy and bondsman. The trial court,

---

[2] Government Code section 818.8 provides: "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such mispresentation be negligent or intentional."

Government Code section 860.2 provides: "Neither a public entity nor a public employee is liable for an injury caused by: [¶] (a) Instituting any judicial or administrative proceeding or action for or incidental to the assessment or collection of a tax. [¶] (b) An act or omission in the interpretation or application of any law relating to tax."

[3] Government Code section 814 provides: "Nothing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee."

however, dismissed the purchaser's action after sustaining the defendants' demurrer without leave to amend. The California Supreme Court affirmed, stating: "The fundamental principle from which the reasons why the purchaser at a delinquent tax sale may not recover damages suffered as a result of the alleged negligence of the assessor in the computation of the amount of tax, is that in tax sales the doctrine of *caveat emptor* applies in all its vigor. A purchaser of property at a tax sale takes the risk of any defect in the proceedings in the taxation process. No warranty of the validity or regularity of the proceedings exists. [Citations.]" (*Routh* v. *Quinn, supra,* 20 Cal.2d at pp. 490-491.)

A similar result occurred in *People* v. *Chambers* (1951) 37 Cal.2d 552 [233 P.2d 557]. There, a purchaser at a tax sale acquired property that had been previously conveyed to the state park commission as part of the state park system. Accordingly, the property was not subject to taxation or to a tax sale. After the purchaser acquired a tax deed, the State obtained a quiet title decree, conditioned upon reimbursing the purchaser. The California Supreme Court determined the purchaser had no statutory remedy against the State as the owner of the property, and quieted title in the State without requiring reimbursement. (See *Holland* v. *Hotchkiss* (1912) 162 Cal. 366, 373, 374 [123 P. 258] (purchaser of invalid tax deed has no contract with owner requiring owner to refund tax paid by purchaser in void tax sale); cf. *Southern Service Co., Ltd.* v. *Los Angeles* (1940) 15 Cal.2d 1, 8 [97 P.2d 963] (taxpayer's right to refund of taxes from State is purely statutory).)

By statute, of course, the purchaser does have a statutory right to a refund when a court finds the tax deed to be void (Rev. & Tax. Code, § 3729), or when it is determined the property should not have been sold (Rev. & Tax. Code, § 3731).[4] But in this case, plaintiff obtained a valid tax deed. Plaintiff can point to no statute which provides a remedy against the State and County for compensatory damages based on the buyer's failure to investigate public records concerning the suitability of the property for construction.

Defendants made no warranty or representation that the property was free of landslides. On the contrary, the County tax collector in conjunction with the tax sale issued a document entitled "General Information on Public Auction Sale of Tax Delinquent Real Property in the County of Los Angeles," which was attached as exhibit "G" to plaintiff's original

---

[4] Even when a remedy exists, the purchaser must comply with the terms of the statute to obtain relief. In *Bell* v. *County of Los Angeles* (1928) 90 Cal.App. 602 [266 P. 291], for example, a tax sale was subsequently found to be invalid because the land was owned by the United States government and not subject to taxation. But the purchaser's refund from the county was denied due to his failure to comply with the terms of the statute. (*Id*. at pp. 605-606.)

complaint. The document contained the following warning: "CAUTION-INVESTIGATE BEFORE YOU BID: [¶] *Do Not* attempt to purchase property at the auction unless an investigation has been made as to the exact location, desirability and usefulness of the property. Parcels are sold on an 'as is' basis and the County in no way assumes any responsibility implied or otherwise, that the properties are in compliance with zoning ordinances and conformance to building codes and permits. An investigation may reveal that the property is in a street or alley, in a flood control channel or landlocked, and that improvements that may be shown on the tax sale list no longer exist at the time of the auction and a lien may have been or will be placed on the property for their removal."[5]

Plaintiff nevertheless contends the statutory remedies found in the Revenue and Taxation Code are not exclusive. (*Schultz* v. *County of Contra Costa* (1984) 157 Cal.App.3d 242 [203 Cal.Rptr. 760].) In *Schultz,* the majority rejected the contention of the State, County of Contra Costa, and tax collector that the remedies of a purchaser at a tax sale are limited to those provided in the Revenue and Taxation Code. The *Schultz* majority affirmed the trial court's judgment rescinding the contract between defendants and plaintiff for the purchase of tax-defaulted realty at a tax sale. The majority concluded plaintiff was equitably entitled to rescission due to his unilateral mistake of material fact concerning the suitability of the land for construction. The land, for which plaintiff had paid $9,100, was unsuitable for building. After the tax sale, the appeals board reduced the assessed value to $2,000.

The *Schultz* majority distinguished *People* v. *Chambers, supra,* 37 Cal.2d 552, and *Bell* v. *County of Los Angeles, supra,* 90 Cal.App. 602, by citing the existence of statutory remedies in those cases. The *Schultz* majority stated: "The *Bell* and *Chambers* holdings are inapplicable to this case because this action is not based on a provision of the Revenue and Taxation Code but on the common law right of rescission as codified in Civil Code section 1689." (*Schultz* v. *County of Contra Costa, supra,* 157 Cal.App.3d at p. 245.) The *Schultz* majority also diverged from *Routh* v. *Quinn, supra,* 20 Cal.2d 488, stating: "The *Routh* holding is no longer viable because current Revenue and Taxation Code sections 3725-3731 provide a remedy for a purchaser at an invalid or irregular tax sale. These three cases consider distinguishable fact situations applying stringent responsibilities of an antiquated era." (*Schultz* v. *County of Contra Costa, supra,* 157 Cal.App.3d at p. 246.)

We disagree with *Schultz* and hold that the State and County are not subject to contractual liability and that purchasers at a tax sale are limited

---

[5] We have previously granted defendants' motion to take judicial notice of this document under Evidence Code section 459.

to statutory remedies. Although title to the property was transferred by operation of law to the State under the former Revenue and Taxation Code procedures utilized in this case, the State's status as owner of the property does not render it contractually liable to disclose all recorded defects concerning the property. It must be kept in mind that the property was "sold" to the State by operation of law in order to collect delinquent taxes and return the property to the tax rolls. Public policy would not be served by imposing a non statutory burden on the State, County, and tax collector to search public records to ascertain the suitability of each tax-defaulted parcel for the undisclosed uses secretly intended by prospective bidders at public tax sales. (See *Schultz* v. *County of Contra Costa, supra,* 157 Cal.App.3d at p. 251 (dis. opn. of King, J.).)

Undoubtedly, plaintiff could have learned of the existence of the landslide prior to the tax sale through the same investigation of public records that led to the discovery three years later. "The burden should be on buyers at tax sales at public auction, in advance of the sale, to take all steps necessary to assure themselves that the use and development of the property which they have in mind will be permitted by local government." (*Schultz* v. *County of Contra Costa, supra,* 157 Cal.App.3d at p. 252 (dis. opn. of King, J.) We part company with the *Schultz* majority and refuse to place the burden of searching the records on the State and County. As the California Supreme Court said in an analogous situation in *Routh* v. *Quinn, supra,* 20 Cal.2d at pages 492-493: "Sound public policy dictates that no such intolerable burden shall be placed upon the tax assessor that will make him liable for any error he may make in the computation of the tax. The multitude of transactions with which he must deal and the great probability that mathematical error may well creep into the calculations regardless of his competency and efficiency, refutes the wisdom of imposing such duty upon him."

We conclude plaintiff cannot state a nonstatutory cause of action arising in contract against the State and County for compensatory damages. Accordingly, the trial court properly exercised its discretion in sustaining the demurrer without leave to amend.

## DISPOSITION

We affirm the judgment (order of dismissal).

Spencer, P. J., and Hanson (Thaxton), J., concurred.