[No. D020669. Fourth Dist., Div. One. Sept. 6, 1995.]

ALBERT A. VAN PETTEN, Plaintiff and Appellant, v.
COUNTY OF SAN DIEGO, Defendant and Respondent.

**[Opinion certified for partial publication[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

COUNSEL

Albert A. Van Petten, in pro. per., for Plaintiff and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley, Chief Deputy County Counsel, and Miriam E. Brewster, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**HUFFMAN, Acting P. J.**—In this appeal we consider whether common law contractual remedies are available to a purchaser of tax-defaulted real property at a public tax sale. We conclude the exclusive remedies available to such a purchaser are those provided by the Revenue and Taxation Code.

### FACTS AND PROCEDURAL BACKGROUND

In January 1991, Albert A. Van Petten attended a public auction of tax-defaulted real properties conducted by the County of San Diego (County). Prior to the auction, Van Petten had received a sales brochure which listed the "assessed value" of each of the parcels. At the auction, it was explained to the bidders that those assessed values reflected "a recent appraisal of the current values." Van Petten was the highest bidder on five parcels. He paid for two of the parcels at the close of the auction and paid deposits on the other three parcels, to one of which the sales brochure ascribed an assessed value of $120,000.

In March 1991, Van Petten advertised that parcel for sale, although he had not completed the purchase of the property from County. The advertisement stated the parcel was assessed at $120,000. Around that time, Van Petten contacted the county assessor's office and discovered the parcel's assessed value listed in the tax records was $11,491. Van Petten demanded the county assessor change the assessed value to $120,000. His demand was refused.[2] Van Petten then demanded rescission of all five of his tax-sale contracts with County. County refused to rescind and advised Van Petten he would forfeit his deposits on the three parcels for which he had not paid full price at the auction if he failed to complete the purchase of those parcels.

Van Petten filed the instant action on August 20, 1991, alleging causes of action for intentional and negligent misrepresentation, breach of the covenant of good faith and fair dealing, deprivation of property without due process of law, denial of equal protection and conspiracy. The court sustained County's demurrer to Van Petten's original complaint without leave to amend on the grounds County and its employees were immune from liability for injuries caused by employee representations under Government Code sections 818.8 and 822.2, Van Petten had not alleged a mandatory duty owed him under Government Code section 815.6, the publication of an alleged "assessed value" was the result of a discretionary act by a public official and therefore protected by immunity under Government Code section 820.2, and various causes of action were uncertain. Van Petten appealed and we reversed with instructions to allow him to amend his complaint to plead a cause of action for breach of contract, seeking only contractual remedies. We did not address the issue of what, if any, contractual remedies were available to Van Petten as a purchaser of real property at a tax sale.

In July 1993, Van Petten filed a second amended complaint alleging four causes of action for rescission and restitution based on mistake, negligent misrepresentation, intentional misrepresentation and breach of contract, respectively. County moved for summary judgment on the ground Van Petten is limited to statutory remedies and there is no statutory basis for rescission of the five contracts. Alternatively, County moved for summary adjudication

---

[2]County explains that because Van Petten still owed $49,500 of the $55,060 sale price, the tax records did not reflect the change of ownership. Consequently, the records still stated the assessed value for the previous year, 1989-1990, rather than the current appraised value stated in the auction brochure. Van Petten apparently does not contend the values listed in the sales brochure were not the actual current market values of the properties according to County's recent appraisal. His grievance appears to be only that the values for the previous year listed in the county assessor's office, which would have been changed to the currently assessed values upon completion by Van Petten of the purchases, were not the same as those listed in the sales brochure. For two of the five properties the currently assessed values were actually *lower* than the value listed in the county recorder's office.

of Van Petten's first three causes of action based on County's alleged misrepresentation on the ground no misrepresentation was made.

The court granted County's motion for summary judgment, finding there was no statutory basis for the relief sought by Van Petten and "the sole remedies for a purchaser of real property at a tax sale are those provided in the Revenue and Taxation Code." The court cited *Craland, Inc.* v. *State of California* (1989) 214 Cal.App.3d 1400, 1405-1406 [263 Cal.Rptr. 255] as authority for that conclusion. The court found County's alternative motion for summary adjudication was moot.

DISCUSSION

I

*Tax Sale Procedure*

"A tax sale proceeding is wholly a creature of statute." (*Craland, Inc.* v. *State of California*, *supra*, 214 Cal.App.3d at p. 1403.) After a declaration of default with respect to real property which has become subject to a tax lien, "the property becomes 'tax-defaulted property.' (. . . §§ 3436, 3439, 126.)[3] The five-year redemption period commences to run upon the declaration of default. (. . . §§ 126, 3691.). . . . [¶] The tax-defaulted property becomes subject to sale following the expiration of the redemption period, and a sale must be attempted within two years thereafter. (. . . § 3691, 3692.) The sale must first be approved by the county board of supervisors and the state controller. (. . . § 3694.)" (*Craland, Inc.* v. *State of California*, *supra*, 214 Cal.App.3d at p. 1404.)

Property sold by public auction pursuant to section 3691 et seq. goes to the highest bidder. (§ 3693.) The minimum purchase price is the "total amount necessary to redeem [the property]," which is defined as the sum of the defaulted taxes, delinquent penalties and costs, redemption penalties and a redemption fee. (§ 3698.5.)[4]

"The tax deed passes title free of all encumbrances except tax liens or assessments, easements, water rights, . . . recorded restrictions[, and any

---

[3]All statutory references are to the Revenue and Taxation Code unless otherwise indicated.

[4]At the time of the auction at issue in the present case, section 3698.5, subdivision (a) provided that the minimum purchase price was "25 percent of the fair market value." "Fair market value" was defined in former subdivision (b) of section 3698.5 as "the amount . . . as determined pursuant to an appraisal of the property by the county assessor within one year immediately preceding the date of the public auction."

Internal Revenue Service liens which, pursuant to federal law, are not discharged by the sale]. (. . . § 3712.) In the absence of actual fraud, the duly acknowledged or proved tax deed is conclusive evidence of the regularity of the tax sale proceedings. (. . . § 3711.) The tax sale furthers the public interest by collecting the taxes owed upon the property, and also returning the property to the tax rolls by placing it into the hands of those who do pay their taxes. [Citation.]" (*Craland, Inc.* v. *State of California, supra,* 214 Cal.App.3d at p. 1404.)

## II

### *Purchaser's Remedies*

There is a split of authority as to whether a purchaser of tax-defaulted property from a public entity at a tax sale is limited to those remedies provided by the Revenue and Taxation Code. The majority in *Schultz* v. *County of Contra Costa* (1984) 157 Cal.App.3d 242 [203 Cal.Rptr. 760], held a purchaser's statutory remedies are not exclusive, affirming a judgment of rescission in favor of a purchaser based on material mistake of fact. The purchaser bought a parcel with the intention of building a residence, but subsequently discovered the parcel was unbuildable. (*Id.* at p. 245.) Defendants County of Contra Costa and State of California relied on three California cases in arguing a purchaser at a tax sale was limited to statutory remedies and that contract rules of rescission do not apply to a tax deed: *Bell* v. *County of Los Angeles* (1928) 90 Cal.App. 602 [266 P. 291]; *People* v. *Chambers* (1951) 37 Cal.2d 552 [233 P.2d 557]; and *Routh* v. *Quinn* (1942) 20 Cal.2d 488 [127 P.2d 1, 149 A.L.R. 215]. (*Schultz* v. *County of Contra Costa, supra,* 157 Cal.App.3d at p. 245.)

In *Bell* the successful bidder on a parcel at a public tax-sale auction sued for a refund of the purchase price when he discovered the property was owned by the United States government rather than the individual in whose name the unpaid taxes on the property had been assessed. (*Bell* v. *County of Los Angeles, supra,* 90 Cal.App. at p. 603.) A statute in effect at that time provided for a refund of money paid for property owned by a public entity, but erroneously sold as private property at a tax sale. (*Id.* at p. 605.) However, the statutory refund was available only for such property sold and *conveyed.* Title to the property had never been *conveyed* to the plaintiff because he never paid the back taxes, penalties and costs assessed against the property as required by statute before conveyance could occur. The court held he was not entitled to the statutory refund because he failed to strictly comply with the terms of the statute providing for that remedy. (*Id.* at pp. 605-606.)

In *Chambers*, the State of California, through the State Park Commission, accepted a conveyance of property for use in the state park system. However, at the time it was conveyed, there were unpaid taxes levied against the property by the County of San Diego. Six years after it was conveyed to the state, the county conveyed the property by tax deed to the defendant. (*People* v. *Chambers*, *supra*, 37 Cal.2d at p. 555.)

In the state's subsequent action to eliminate the tax deed, the trial court issued a decree quieting title in the state on the condition it reimburse the purchase price defendant paid for the property and the money he paid in taxes on the property after purchase. (*People* v. *Chambers*, *supra*, 37 Cal.2d at pp. 555, 561.) The *Chambers* court reversed the portion of the judgment requiring reimbursement, holding ". . . in the absence of statute, a purchaser from the state or public agency at a tax sale cannot recover from the seller the purchase price paid or the taxes subsequently assessed even though the taxes were illegally assessed or levied . . . . [Citations.] Where a statute provides for recovery, that remedy is exclusive. [Citations.]" (*People* v. *Chambers*, *supra*, 37 Cal.2d at p. 561.) At that time section 3730[5] did provide for a refund *by the county* (as seller) of the purchase price paid for tax-deeded property where the board of supervisors determined ". . . the property belongs to the United States, this State, a city, or other political subdivision of this State and should not have been sold for taxes." (*People* v. *Chambers*, *supra*, 37 Cal.2d at p. 562.) However, *Chambers* concluded the state (as owner) could not be required to reimburse defendant because there was no statutory authority for such reimbursement. Statutes requiring an owner to refund taxes paid by a tax-sale purchaser when the tax deed is void (§§ 3728, 3728.1) were inapplicable because the property, being owned by the state rather than a private person, was not taxable. (*People* v. *Chambers*, *supra*, 37 Cal.2d at p. 562.)

In *Routh*, the plaintiff sued the county tax assessor, alleging plaintiff's purchase of personal property at a delinquent tax sale was void due to erroneous computation by the tax assessor of the amount of tax owing and that as a result, the owner of the property had recovered a judgment against plaintiff for conversion of the property. (*Routh* v. *Quinn*, *supra*, 20 Cal.2d at pp. 489-490.) The trial court sustained the defendants' demurrer to the complaint without leave to amend.

The *Routh* court affirmed, concluding "a purchaser at a delinquent tax sale may not recover damages suffered as a result of the alleged negligence of the assessor in the computation of the amount of tax, [because] . . . in tax sales

---

[5]Section 3730 was repealed in 1971.

the doctrine of *caveat emptor* applies in all its vigor. A purchaser of property at a tax sale takes the risk of any defect in the proceedings in the taxation process. No warranty of the validity or regularity of the proceedings exists. [Citations.]" (*Routh* v. *Quinn, supra,* 20 Cal.2d at p. 490.)

*Routh* noted that while a tax-sale purchaser by statute could recover from the county the amount of the purchase price in excess of the delinquent taxes, "that statute must be strictly complied with and permits only the recovery there authorized. [Citation.] There is no statute authorizing recovery against the tax assessor. If the money paid at the sale by the purchaser cannot be recovered from the county or state except by statutory authority, surely for the same reason, *caveat emptor*, no recovery could be had against them for the negligence of their officers in the computation of the tax. While plaintiff's action is against the tax assessor as an individual, rather than the county, the same rule extends to protect the assessor. [Citation.]" (*Routh* v. *Quinn, supra,* 20 Cal.2d at p. 491.)

The *Schultz* majority did not view *Bell, Chambers* and *Routh* as authority for the proposition that the sole remedies for a purchaser at a tax sale are those provided by statute. *Schultz* found *Bell* and *Chambers* distinguishable, noting both cases involved the sale of land belonging to another governmental entity and "[b]oth courts held that because a statutory provision provides for recovery in that situation [citations], that remedy is exclusive. [Citations.]" (*Schultz* v. *County of Contra Costa, supra,* 157 Cal.App.3d at p. 245.) *Schultz* concluded "[t]he *Bell* and *Chambers* holdings are inapplicable to this case because this action is not based on a provision of the Revenue and Taxation Code but on the common law right of rescission as codified in Civil Code section 1689." (*Schultz* v. *County of Contra Costa, supra,* 157 Cal.App.3d at p. 245.)

Regarding the caveat emptor basis for the *Routh* decision, the *Schultz* majority pointed out "*Routh* was based on provisions of the former Political Code which contained no warranties of the validity or regularity of tax sale proceedings." (*Schultz* v. *County of Contra Costa, supra,* 157 Cal.App.3d at p. 246.) *Schultz* concluded "[t]he *Routh* holding is no longer viable because current Revenue and Taxation Code sections 3725-3731 provide a remedy for a purchaser at an invalid or irregular tax sale. These three cases consider distinguishable fact situations applying stringent responsibilities of an antiquated era." (*Schultz* v. *County of Contra Costa, supra,* 157 Cal.App.3d at p. 246.)

*Craland* disagreed with *Schultz*, noting "[a]lthough a tax sale admittedly constitutes a contract, the California courts, with but one exception [*Schultz*],

have not applied ordinary contract law to determine the rights of the purchaser against the seller. The overwhelming body of decisional law governing tax sales establishes that the State and County, absent a representation to the contrary, do not warrant the validity or regularity of tax sale proceedings. [Citation.] For this reason, neither the State nor the County owes any nonstatutory duty of care with respect to the purchaser. [Citation.]" (*Craland, Inc.* v. *State of California, supra*, 214 Cal.App.3d at p. 1405.) Accordingly, *Craland* held, "the State and County are not subject to contractual liability and . . . purchasers at a tax sale are limited to statutory remedies." (*Id.* at pp. 1407-1408.)

We agree with *Craland*'s analysis and holding, and emphasize, as stated in *Routh*, that "in tax sales the doctrine of *caveat emptor* applies in all its vigor." (*Routh* v. *Quinn, supra*, 20 Cal.2d at p. 490.) The *Schultz* majority concluded the *Routh* caveat emptor holding was no longer viable because the former Political Code in effect when *Routh* was decided provided no warranties of the validity or regularity of tax sale proceedings, whereas sections 3725 through 3731, in the opinion of the *Schultz* majority, provide purchasers a remedy for an invalid or irregular tax sale. (*Schultz* v. *County of Contra Costa, supra*, 157 Cal.App.3d at p. 246.) The implicit conclusion in *Schultz*'s analysis is that the current statutory scheme, unlike the former Political Code, *does* provide a warranty of the validity or regularity of tax-sale proceedings. Such conclusion, however, is unsupported by the language of sections 3725 through 3731.

Sections 3725 and 3726 refer to a proceeding and defense, respectively, "based on alleged invalidity or irregularity" of any tax-sale proceedings. However, these sections address only the limitations period within which such a proceeding or defense must be asserted; they do not provide a remedy for invalid or irregular proceedings as stated in *Schultz*. Sections 3728 through 3729 involve invalidity of tax *deeds*, and section 3731 addresses rescission of a tax sale of property which "should not have been sold" (e.g., because it was owned by a governmental entity at the time of sale), without reference to invalidity or irregularity of the sale *proceedings*. We find nothing in these statutes which abrogates, as suggested by *Schultz*, the principle articulated in *Routh* that a purchaser of property at a tax sale takes the risk of any defect in the proceedings and is provided no warranty of the validity or regularity of the proceedings.

The principle of caveat emptor as it forcefully applies to tax sales is particularly applicable in the instant case, as the sales brochure Van Petten received in advance of the tax sale explicitly stated, "[t]ax defaulted property

will be sold on an 'as is' basis[,]" and warned bidders: "RESEARCH BEFORE YOU INVEST!" Van Petten could have easily compared the "assessed" values listed in the sales brochure with the assessed values listed in the assessor's office prior to the sale. Moreover, Van Petten was an experienced purchaser of properties at tax sales, having previously attended many public tax-sale auctions and purchased approximately eight properties at such auctions.

We follow the well-settled rule of *Chambers* and *Craland* that purchasers of property at a tax sale are limited to statutory remedies and reject *Schultz*'s holding to the contrary. Under the Revenue and Taxation Code, a purchaser at a tax sale is entitled to a refund of purchase money paid only where the court determines the tax deed is void (§ 3729) or the property "should not have been sold" (§ 3731). There is no statutory remedy of rescission or refund based on the misrepresentation and breach of contract theories alleged by Van Petten in the instant case. Accordingly, the court properly granted summary judgment in County's favor on Van Petten's second amended complaint.

III*

*Constitutional Contentions*

. . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Haller, J., and McDonald, J., concurred.

A petition for a rehearing was denied September 19, 1995, and appellant's petition for review by the Supreme Court was denied November 16, 1995.

*See footnote 1, *ante*, page 43.