[No. B189740. Second Dist., Div. Eight. Apr. 13, 2007.]

L&B REAL ESTATE, Plaintiff and Appellant, v.
HOUSING AUTHORITY OF THE COUNTY OF LOS ANGELES,
Defendant and Respondent.

952

## COUNSEL

Ezer Williamson & Brown and Michel J. Ezer for Plaintiff and Appellant.

Brown, Winfield & Canzoneri, Wayne S. Grajewksi and Erin H. Welsh for Defendant and Respondent.

## OPINION

**RUBIN, Acting P. J.**—L&B Real Estate appeals from the judgment entered in actions that voided L&B's tax deed to a low-income housing project and quieted title in the true owner, the Housing Authority of the County of Los Angeles. Because that tax deed was void, we affirm.

## FACTS AND PROCEDURAL HISTORY

In 1985, the E.A. Reeves Partnership (Reeves) owned lot 14 and portions of lots 15 and 16 of the Springdale Tract along Willowbrook Avenue in South Central Los Angeles.[1] At that time, Reeves contracted with the State of California to build a low-income housing townhouse project on those parcels and convey the completed project to the state. Even though the written agreements between Reeves and the state made clear that parcels 14, 15, and 16 were being conveyed, a scrivener's error omitted any reference to parcels 15 and 16 from the 1989 grant deed to the state. In June 1990, the state sold the townhouse project to the Housing Authority of the County of Los Angeles (Authority). Even though all the written agreements between the parties showed their intent to convey all three parcels, the scrivener's error from the 1989 grant deed was carried over and the 1990 deed by the state to the Authority mistakenly listed only parcel 14, not parcels 15 and 16.[2]

Government-owned property is exempt from taxation. (Cal. Const., art. XIII, § 3, subds. (a), (b).) When the Authority bought the property, it sent the Los Angeles County auditor the required notification of the ownership change to a tax exempt government entity, but failed to send that document to the county assessor. (Rev. & Tax. Code, § 5082.1.)[3] Apparently believing that Reeves still owned parcels 15 and 16, the assessor continued to send out tax bills on those parcels, which were never paid. In February 1995, Hector Nevarez

---

[1] For ease of reference, when we refer to lots 15 and 16, we mean those portions of the two parcels that are in dispute.

[2] These facts are undisputed.

[3] All further undesignated section references are to the Revenue and Taxation Code.

obtained a tax deed to the property after buying it at a tax sale.[4] When Nevarez failed to make the property tax payments, the parcels were sold to L&B Real Estate (L&B)[5] at a 2003 tax sale. It is undisputed that from 1990 on, the Authority did not receive any tax bills, notices of tax default, or notices of tax sale, and had no actual notice of any tax sales of parcels 15 and 16.

L&B brought a quiet title action against the Authority in December 2004 after learning that the Authority claimed it was the true owner of the disputed parcels.[6] The Authority cross-complained, then sought summary judgment of L&B's complaint, contending that L&B's tax deed was void because L&B had constructive notice of the Authority's ownership and was therefore not a good faith purchaser, and because the property was exempt from taxation and therefore could not be sold at a tax sale. The trial court granted summary judgment for the Authority. After that, the parties stipulated to a trial on limited evidence and agreed facts as to three of the causes of action in the Authority's cross-complaint: the first for reformation of its deed based on mutual mistake; the fourth to quiet title; and the 10th, for declaratory relief. After considering the evidence and agreed facts, the trial court entered an order in favor of the Authority on those three causes of action. The Authority then dismissed the remaining causes of action that were still pending against L&B. As a result, title to the disputed parcels was quieted in favor of the Authority. L&B appeals from the judgment on its complaint and from the order on the cross-complaint quieting title in favor of the Authority.

## STANDARD OF REVIEW

Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) In reviewing an order granting summary judgment, we must assume the role of the trial court and redetermine the merits of the motion. In doing so, we must strictly scrutinize the moving party's papers. The declarations of the party opposing summary judgment, however, are liberally construed to determine the existence of triable issues of fact. All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. While the appellate court must review a summary judgment motion by the same standards as the trial court, it must

---

[4] A tax sale proceeding is a creature of statute that comes into play after a tax default is declared on real property subject to a tax lien. After the passage of a statutory redemption period and other procedural requirements not relevant here, the property is sold and the new owner obtains a tax deed to the property. (§§ 126, 3436, 3439, 3691, 3693, 3694, 3712; *Van Petten v. County of San Diego* (1995) 38 Cal.App.4th 43, 46–47 [44 Cal.Rptr.2d 816].)

[5] L&B is a California limited partnership.

[6] L&B also sued Nevarez, but later dismissed him from the action.

independently determine as a matter of law the construction and effect of the facts presented. (*Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562 [42 Cal.Rptr.2d 697].)

A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (*o*)(2), (p)(2).) If the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense. In doing so, the plaintiff cannot rely on the mere allegations or denial of her pleadings, "but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (Code Civ. Proc., § 437c, subd. (p)(2).) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. [Fn. omitted.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

■ Because we interpret statutes based on undisputed facts, we are not bound by the trial court's interpretation, and instead decide the correct interpretation as a matter of law. (*Travelers Indemnity Co. v. Maryland Casualty Co.* (1996) 41 Cal.App.4th 1538, 1543 [49 Cal.Rptr.2d 271].) " 'The fundamental rule of statutory construction is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. . . . In doing so, we first look to the words of the statute and try to give effect to the usual, ordinary import of the language, at the same time not rendering any language mere surplusage. The words must be construed in context and in light of the nature and obvious purpose of the statute where they appear. . . . The statute " 'must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. . . .' " . . . If the language of a statute is clear, we should not add to or alter it to accomplish a purpose which does not appear on the face of the statute or from its legislative history.' [Citation.] Statutes must be harmonized, both internally and with each other. [Citation.]" (*Pang v. Beverly Hospital, Inc.* (2000) 79 Cal.App.4th 986, 994 [94 Cal.Rptr.2d 643].)

As for the cross-complaint, because we resolve issues of constitutional and statutory interpretation based on undisputed facts, we apply our independent review. (*Independent Energy Producers Assn., Inc. v. State Bd. of Equalization* (2004) 125 Cal.App.4th 425, 436–437 [22 Cal.Rptr.3d 562].)

## DISCUSSION

■ Property owned by the state or a local government entity is exempt from real property taxation. (Cal. Const., art. XIII, § 3, subds. (a), (b).) This exemption exists because when a local government or state agency owns real property, the ultimate title is in the state itself. Allowing such property to be taxed would produce the absurd result of having the state effectively tax itself. (*Sacramento Mun. Utility Dist. v. County of Sonoma* (1991) 235 Cal.App.3d 726, 732 [1 Cal.Rptr.2d 99].) As a result, although provisions exempting private property from taxation are strictly construed, because taxation of public property is the exception and not the rule, and may occur only if there is express authority to do so, the exemption for public property is liberally construed. (*Ibid.*) "Public ownership alone confers the exemption; the exemption is not conditioned on use of the property exclusively for governmental purposes. [Citations.]" (*Ibid.*)

■ Because public property is exempt from taxation, tax deeds purporting to convey such property for nonpayment of taxes are void. (*People v. Chambers* (1951) 37 Cal.2d 552, 555–556 [233 P.2d 557]; *People ex rel. Dept. Pub. Wks. v. Fink* (1964) 226 Cal.App.2d 19, 21 [37 Cal.Rptr. 724].) L&B contends this rule does not apply because: (1) a public agency may waive its tax exempt status, and the Authority did so here by failing to comply with section 5082.1; (2) under sections 613, 3711 and 3712, its tax deed and that of Nevarez are conclusively presumed to be valid; and (3) the Authority's attempt to invalidate L&B's tax deed is barred by the one-year limitations period set forth in sections 177 and 3725. We take each contention in turn.

L&B relies primarily on *Chesney v. Byram* (1940) 15 Cal.2d 460 [101 P.2d 1106] (*Chesney*) for the proposition that government entities can waive their tax exempt status. *Chesney* concerned the constitutional exemption of $1,000 for military veterans (former Cal. Const., art. XIII, § 1 1/4; now found at § 3, subd. (*o*).) Under former Political Code section 3612, unless persons claiming that exemption filed certain documents proving their eligibility, the exemption was waived. The Supreme Court held that even though the constitutional exemptions from property taxation were self-executing, the Legislature could enact laws to regulate the exercise of those exemptions. Failure to abide by those regulations meant that the exemption was waived. (*Chesney, supra*, at pp. 465–472.) L&B's contention that this holding applies to publicly owned property is wrong. The laws respecting property taxation refer to private property and persons, not to public property. (*Webster v. Board of Regents* (1912) 163 Cal. 705, 710 [126 P. 974].) Former Political Code section 3612 is now found in section 260 (see Historical and Statutory Notes, 59 West's Ann. Rev. & Tax. Code (1998 ed.) foll. § 260, p. 501), which states that any person claiming a property tax exemption provided in article 1 of chapter 1 of part 2

of division 1 of the Revenue and Taxation Code is deemed to have waived the exemption. All of those exemptions are found in sections 201 through 241, and do not include property owned by the state or a local government entity. In short, *Chesney* concerned only those constitutional tax exemptions relating to property not owned by the government, as to which the Legislature has imposed certain filing requirements in order to claim the exemption. *Chesney* did not hold that the government must do anything in order to claim and preserve *its* tax exempt status. (See *Sacramento Mun. Utility Dist. v. County of Sonoma, supra,* 235 Cal.App.3d at p. 732 [public ownership alone confers the exemption].)[7]

L&B's reliance on section 5082.1 is also misplaced. That section is part of an article that provides for the cancellation of tax liens on property as of the date it is acquired by the state or a local government. (§ 5081.) An apportionment is made as of that date (§ 5082), and any unpaid taxes or liens shall be paid from the sales price in escrow or from the eminent domain award if the property were obtained in that manner. (§§ 5083 and 5084; see Law Revision Com. com., 59B West's Ann. Rev. & Tax. Code, *supra,* foll. §§ 5083, 5084 at pp. 299–300.) Section 5082.1 requires a public entity acquiring property that was previously taxable to file notices of the acquisition with the appropriate county's auditor and assessor and request that taxes be cancelled after the date of acquisition. We hold that section inapplicable here because it has nothing to do with the tax exempt status of the property. Assuming for discussion's sake only that the Legislature could establish a mechanism by which the state or a local government entity could waive its property tax exemption, section 5082.1 does not do so because it is silent as to that issue.

■ L&B contends, however, that the Authority's loss of its tax exempt status for failing to comply with section 5082.1 is mandated by section 4987, which provides: "No cancellation shall be made of charges on tax exempt property if there has not been compliance with the statutory procedure for claiming the exemption." Section 4987 is part of a Revenue and Taxation Code article concerning the cancellation of taxes, penalties, or costs that were wrongly imposed. (See § 4986.) By its terms, its application to tax exempt property is dependent on the existence of statutory procedures for claiming an exemption. As just discussed, the only statutory procedures for doing so are found in sections 201 through 241, which do not include government-owned property. Because section 5082.1 does not provide a procedure for claiming a tax exemption for public property, section 4987 is inapplicable.

■ Next, L&B contends that its tax deed and that of Nevarez are conclusively deemed valid. Section 3711 states that "[e]xcept as against

---

[7] At oral argument, L&B's lawyer conceded that section 260 did not apply to government-owned property.

actual fraud, the [tax] deed duly acknowledged or proved is conclusive evidence of the regularity of all proceedings from the assessment of the assessor to the execution of the [tax] deed, both inclusive." Section 3712 provides that a tax deed conveys a title free of all encumbrances except for easements and certain tax liens or special assessments. L&B contends this conveyed to it a "super title" immune to attack on any ground but fraud.

However, such curative statutes simply provide conclusive evidence that all taxing procedures other than those affecting jurisdiction, consonant with due process, have been followed. (*Sinclair & Valentine Co. v. County of Los Angeles* (1988) 201 Cal.App.3d 1021, 1026 [247 Cal.Rptr. 568]; *Roma v. Elbert, Ltd.* (1946) 73 Cal.App.2d 338, 340–341 [166 P.2d 294] [§ 3711 does not make tax deed conclusive evidence of matters essential to the exercise of the taxing power].) Among the jurisdictional prerequisites to a valid tax deed is property legally subject to being taxed. (*Miller v. McKenna* (1944) 23 Cal.2d 774, 782 [147 P.2d 531]; *Sheeter v. Lifur* (1952) 113 Cal.App.2d 729, 737 [249 P.2d 336] [unless there was in fact a tax delinquency, a tax sale and ensuing tax deed are void].) Because there was no tax liability by the Authority, sections 3711 and 3712 do not apply.[8]

The same is true of section 613, which states only that mistakes in an owner's name do not make an assessment or a tax deed invalid. This section is part of the article concerning preparation of the assessment roll (§§ 601–623) and has been used to rescue tax assessments where taxes were mistakenly assessed in the name of someone other than the true owner (*Interstate Realty etc. Co. v. Clark* (1926) 77 Cal.App. 558 [247 P. 244]) or when the owner's name was misspelled. (*Schainman v. All Persons* (1929) 96 Cal.App. 753 [276 P. 113].) It has no application here, where a tax deed is void from the inception due to the jurisdictional defect caused when tax exempt property has been sold at a tax sale.

---

[8] L&B contends that the fault for this situation lies with the Authority because it failed to notify the assessor it had acquired the property. Therefore, according to L&B, it is inequitable to void the tax deed. The fault is not the Authority's alone, however. One ground for the summary judgment motion was L&B's constructive notice that the Authority owned lots 15 and 16. The undisputed evidence to support this contention included the following: the townhouse project straddled lots 14, 15, and 16, and portions of the complex sat on lots 15 and 16; L&B's employees drove by and saw the complex before the tax sale and were aware that parts of the townhouse complex sat on the adjoining lot 14; L&B therefore knew it would be buying only part of the complex; a large sign in front of the complex states "Community Development Commission, County of Los Angeles"; L&B did not obtain a preliminary title report before buying the property; and it obtained such a report after the sale, and that report showed various documents in the chain of title, such as agreements between the state and the Authority, showing lots 15 and 16 were meant to be conveyed along with lot 14. On appeal, L&B does not contest those facts or the trial court's finding about its constructive notice of the Authority's ownership. In short, L&B either knew or should have known it was buying property that belonged to the Authority.

■ Finally, L&B contends that the Authority was barred from raising the invalidity of L&B's tax deed by the one-year limitations period set forth in sections 177 and 3725. Section 3725 states in relevant part that proceedings "based on alleged invalidity or irregularity of any proceedings instituted under this chapter can only be commenced within one year after the date of execution of the tax collector's deed." Section 3726 provides the same limitations period when the invalidity or irregularity of a tax deed is asserted as a defense. Section 177 is a companion statute to section 175, and both contain similar language in situations where tax deeds *to* a government entity are concerned. Because Nevarez took his tax deed in 1995, and because this litigation did not begin until more than one year after L&B obtained its tax deed, L&B contends the Authority's cross-complaint and defense of invalidity are both time-barred.

Decisions interpreting section 3725 and 175 hold that those limitation periods do not apply when a jurisdictional defect in the tax deed is involved. (*Paul v. Los Angeles County Flood Control Dist.* (1974) 37 Cal.App.3d 265, 272–273 [112 Cal.Rptr. 274]; *Nevada Irr. Dist. v. Keystone Copper Corp.* (1964) 224 Cal.App.2d 523, 529–530 [36 Cal.Rptr. 775]; see Code Com. Notes, 59B West's Ann. Rev. & Tax. Code, *supra*, foll. § 3725 at p. 88 (citations omitted) ["The statute of limitations in this section would not apply to cases of a jurisdictional invalidity where the original owner was still in possession of the property."].) As noted above, because the property was tax exempt, the defect in title was jurisdictional. The Authority remained in possession of the property since 1990. Therefore, the limitations period does not apply. We hold that section 177 is inapplicable because that section involves tax deeds *to* government entities. Even so, the rationale of the decisions just cited applies with equal force to section 177.

L&B also contends that even if we affirm the rulings that quieted title in the Authority, we must still reverse because the court did not order the Authority to pay L&B its $99,000 purchase price. L&B's sole remedy lies in section 3729, which provides for proceedings where L&B can seek and obtain a refund from the County. (*Van Petten v. County of San Diego, supra,* 38 Cal.App.4th at pp. 50–51.) Such an action is currently pending (Super. Ct. L.A. County, No. BC360757) and that is where L&B must seek return of the purchase price.[9]

---

[9] Although at oral argument counsel for the Authority agreed that L&B was entitled to seek its remedy through this procedure, nothing in our decision should be construed as a comment upon that proceeding.

## DISPOSITION

For the reasons set forth above, the judgment is affirmed. Respondent to recover its costs on appeal.

Boland, J., and Flier, J., concurred.