[No. F045677. Fifth Dist. May 4, 2005.]

ZARMINA AZADOZY, Plaintiff and Respondent, v.
HAROLD NIKOGHOSIAN, Defendant and Appellant.

COUNSEL

Peter D. Moock, County Counsel, and Jeanette Cauble, Deputy County Counsel, for Defendant and Appellant.

Moses S. Hall for Plaintiff and Respondent.

OPINION

**ARDAIZ, P. J.**—Appellant Harold Nikoghosian is the chief accountant of the Kings County Auditor's Office. He appeals from a writ of mandate issued by the superior court directing him to pay to respondent Zarmina Azadozy the "excess proceeds" (Rev. & Tax. Code, § 4675)[1] from the tax sale of a parcel of property located at 421 West Stanislaus Street in Avenal. Nikoghosian contends that the trial court erred in ordering the issuance of the writ of mandate because Azadozy is not within the class of persons described in section 4675 as being entitled to claim excess proceeds from a tax sale. As we shall explain, we agree with appellant Nikoghosian. We hold that a holder of unrecorded title to property sold at a tax sale is not a "party of interest" within the meaning of section 4675.

## FACTS

The facts are not in dispute. Azadozy purchased the property at a trustee's sale on or about April 25, 1996. She did not record her deed. Property taxes on the property were not paid for several years. On or about March 14, 2003, the property was sold at a tax sale. In October of 2003 Azadozy filed a claim with Kings County for the excess proceeds from the tax sale. Nikoghosian rejected Azadozy's claim. Azadozy then sought and obtained the writ of mandamus directing Nikoghosian to pay her the excess proceeds.

### SECTION 4675 DOES NOT AUTHORIZE DISTRIBUTION OF EXCESS PROCEEDS TO A HOLDER OF UNRECORDED TITLE

Section 4675 states in its entirety:

"(a) Any party of interest in the property may file with the county a claim for the excess proceeds, in proportion to his or her interest held with others of equal priority in the property at the time of sale, at any time prior to the expiration of one year following the recordation of the tax collector's deed to the purchaser.

---

[1] All further references are to the Revenue and Taxation Code unless otherwise stated.

"(b) After the property has been sold, a party of interest in the property at the time of the sale may assign his or her right to claim the excess proceeds only by a dated, written instrument that explicitly states that the right to claim the excess proceeds is being assigned, and only after each party to the proposed assignment has disclosed to each other party to the proposed assignment all facts of which he or she is aware relating to the value of the right that is being assigned. Any attempted assignment that does not comply with these requirements shall have no effect. This paragraph shall apply only with respect to assignments on or after the effective date of this paragraph.

"(c) Any person or entity who in any way acts on behalf of, or in place of, any party of interest with respect to filing a claim for any excess proceeds shall submit proof with the claim that the amount of excess proceeds has been disclosed to the party of interest and that the party of interest has been advised of his or her right to file a claim for the excess proceeds on his or her own behalf.

"(d) The claims shall contain any information and proof deemed necessary by the board of supervisors to establish the claimant's rights to all or any portion of the excess proceeds.

"(e) No sooner than one year following the recordation of the tax collector's deed to the purchaser, and if the excess proceeds have been claimed by any party of interest as provided herein, the excess proceeds shall be distributed on order of the board of supervisors to the parties of interest who have claimed the excess proceeds in the order of priority set forth in subdivisions (a) and (b). For the purposes of this article, parties of interest and their order of priority are:

"(1) First, lienholders of record prior to the recordation of the tax deed to the purchaser in the order of their priority.

"(2) Second, any person with title of record to all or any portion of the property prior to the recordation of the tax deed to the purchaser.

"(f) In the event that a person with title of record is decreased at the time of the distribution of the excess proceeds, the heirs may submit an affidavit pursuant to Chapter 3 (commencing with Section 13100) of Part I of Division 8 of the Probate Code, to support their claim for excess proceeds.

"(g) Any action or proceeding to review the decision of the board of supervisors shall be commenced within 90 days after the date of that decision of the board of supervisors."

Azadozy was not a lienholder of record. (§ 4675, subd. (e)(1).) Nor did she hold "title of record" if those words are understood to mean a holder of recorded title. (§ 4675 subd. (e)(2).) It is undisputed that she did not record her title. Relying on *Fjaeran v. Board of Supervisors* (1989) 210 Cal.App.3d 434 [258 Cal.Rptr. 353], she contends that because she was the assignee of a titleholder of record (i.e., she purchased the property from a holder of recorded title), she should be deemed a "person with title of record" within the meaning of section 4675, subdivision (e)(2). We disagree.

■ "When construing a statute, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' (*Dubois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978].) The words of the statute are the starting point. 'Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature. . . .' (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299] (*Lungren*).) If the language permits more than one reasonable interpretation, however, the court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154].) After considering these extrinsic aids, we 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].)" (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977–978 [90 Cal.Rptr.2d 260, 987 P.2d 727].)

In the present case, the starting point appears to be the ending point as well. The words "any person with title of record" appear to be abundantly clear. Respondent Azadozy would have us read the statute as if it said "any person with title of record, or any holder of unrecorded title who acquired title from a titleholder of record." Respondent's interpretation is simply not what the statute says. Respondent relies on *Fjaeran v. Board of Supervisors, supra,* 210 Cal.App.3d 434. In *Fjaeran* the court concluded that a pre-tax-sale assignee of a "party of interest" could claim excess proceeds under section 4675. *Fjaeran* acknowledged that the assignment of a judgment may be recorded, and that the recording of the assignment would establish the assignee's priority in relation to other assignees of the same judgment in the event that the original judgment creditor assigns his or her rights in the judgment to more than one assignee. *Fjaeran* also acknowledged that the failure to record an assignment of a judgment will preclude the assignee from

obtaining a writ of execution and from using other enforcement remedies for judgment creditors provided for in the Code of Civil Procedure. The *Fjaeran* court stated that "[o]therwise . . . the execution and delivery of a written assignment operates to transfer to the assignee all other rights represented by the judgment" (*Fjaeran v. Board of Supervisors, supra,* 210 Cal.App.3d at p. 440), and concluded that therefore the assignee of a judgment could claim excess proceeds under section 4675 just as a lienholder of record could.

The *Fjaeran* court was thus of the view that the Legislature did not intend to prohibit a pre-tax-sale assignee of a judgment from making a section 4675 claim for excess proceeds. Although we have doubts about the rationale and conclusion of *Fjaeran,* we cannot discern from section 4675 any legislative intent to permit holders of unrecorded title to make claims for excess proceeds. The statute expressly states that it is "any person with title of record" who may make such a claim. This language does not include any person who does not hold title of record, such as respondent Azadozy. Indeed, prior to a 1985 amendment, the statute defined "parties of interest" to include "any person who would be established with title to all or any portion of the property sold by the state by redemption of such property immediately prior to the sale by the state." (Stats. 1976, ch. 113, § 6, p. 177.) Appellant Nikoghosian points out that under this pre-1985 amendment language, "parties of interest" were not limited to holders of record title. But the statute was amended in 1985 to read as it presently does, i.e. to limit titleholder "parties of interest" to holders of "title of record." (Stats. 1985, ch. 316, § 71, pp. 1393–1394.) The Legislature presumably meant what it said. Indeed, this change appears to have been the very purpose of the 1985 amendment to the statute.

Azadozy argues that a literal reading of subdivision (e)(2) of the statute would lead to the "absurd" consequence of depriving her of excess proceeds. We disagree. Prior to the enactment of section 4675, no titleholder had any right to excess proceeds from a tax sale. (*Chesney v. Graham* (1976) 64 Cal.App.3d 120 [134 Cal.Rptr. 238] see also *Mission Valley East, Inc. v. County of Kern* (1981) 120 Cal.App.3d 89, 92, fn. 1 [174 Cal.Rptr. 300].) The statute's definition of "parties of interest" serves the purpose of providing the County with an administratively convenient way to determine who a titleholder is if there are conflicting claims of ownership of the property. Holders of unrecorded title do not have the same rights as holders of recorded title. "[A] person who qualifies as a bona fide purchaser receives his or her interest free and clear of prior unknown interests, *if his or her interest is recorded.* The recording statutes only protect the interest of a bona fide purchaser or encumbrancer that is created by a recorded instrument, by granting priority over all prior unrecorded and unknown interests. Thus, priority is given only

to a bona fide purchaser or encumbrancer *who first duly records* the instrument creating the interest." (5 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 11.3, p. 15, fns. omitted.)

## DISPOSITION

The judgment is reversed. Costs to appellant.

Dibiaso, J., and Vartabedian, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 13, 2005. George, C. J., and Baxter, J., did not participate therein.