Filed 11/12/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| JEROME CARLOSS,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF ALAMEDA,<br><br>        Defendant and Respondent. | A143531<br><br>(Alameda County<br>Super. Ct. No. HG14717502) |

The County of Alameda (county) seized and sold residential property that was in default on property taxes. The sale proceeds exceeded the tax delinquency. Jerome Carloss, the son of the deceased former resident of the property, filed a claim with the county for the excess proceeds under a statute that permits a "person with title of record" to tax-defaulted property or the person's successor to claim sale proceeds in excess of the tax liability. (Rev. & Tax. Code, § 4675, subds. (a), (e)(1)(B), (f).)[1] Carloss's mother was listed as the property owner in county tax records and had lived in the house for over 50 years. The county denied the claim because no deed appears in the county records and the county concluded that title of record can be established only with a recorded deed. Carloss filed this action to challenge the county's decision.

The trial court sustained a demurrer without leave to amend and dismissed the action. The court found (1) the action is time-barred because it was not filed within 90 days of the county's administrative decision and (2) the complaint fails to state a claim for relief because there is no right to excess proceeds from a tax-default sale in the absence of a recorded grant deed. (§ 4675, subds. (e)(1)(B), (f), (g).) We conclude the

---

[1] All further section references are to the Revenue and Taxation Code except as noted.

action is timely and that a recorded grant deed is not the exclusive means of proving a person's title of record. While such a deed is the normal means of establishing title of record, and proving title may be difficult in the absence of such a deed, in unusual circumstances such as Carloss has alleged here, title of record may be established by recorded instruments of various types, the assessor's records, and testimony that, as a whole, proves that the claimant or the claimant's predecessor in interest held title of record. Allegations in the complaint that "many documents were recorded in the chain of title" evidencing ownership that the county failed to consider sufficiently state a claim. We shall therefore reverse the judgment.

### Statement of Facts and Administrative Proceedings

The statement of facts is based on Carloss's first amended complaint and documents from the administrative proceeding of which the trial court properly took judicial notice.[2]

Carloss's mother lived in a house on Oakland's Magnolia Street for over 50 years and regularly paid property taxes to the county during most of that period. She failed to pay taxes in the final years of her life and, in March 2011, the county sold the property at auction to collect the unpaid taxes. The mother died soon after the sale. After satisfaction of all outstanding amounts due the county, there was a balance of $64,995 from the sale.

Carloss filed a claim with the county for the excess proceeds, as did other family members. (§ 4675.) In August 2013, the county held an evidentiary hearing to evaluate the claims. Carloss testified that his father, mother and mother's brother, Jefftean Anderson, Sr., owned the property as joint tenants until 1967, when Anderson died and Carloss's parents succeeded to ownership. Carloss's father died in 1988, leaving Carlos's mother as the sole owner. Carloss claimed he was his mother's heir.

No grant deed was produced. Carloss alleges that "no actual recorded deed can be located in the public records because of a probable mis-indexing by the County of

---

[2] We treat a demurrer "as admitting all material facts properly pleaded" and also consider matters that may be judicially noticed. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Alameda at the time of acquisition." As evidence of ownership, Carloss submitted a recorded 1952 deed of trust with Carloss's parents and Anderson as the grantors and Willie and Bennie Steward as beneficiaries and a recorded 1985 affidavit of death of joint tenant (Anderson) referencing a deed of reconveyance in 1956 from the Stewards. The hearing officer also reviewed an assessor's office history, listing Carloss's parents and Anderson as owners in 1969 and Carloss's parents as owners in 2010.

In September 2013, the hearing officer issued a written decision denying all claims upon finding a failure of proof that any claimant was a "party of interest in the property" entitled to excess proceeds. (§ 4675, subd. (a).) A party of interest is statutorily defined as "lienholders of record" and persons "with title of record." (*id.*, subd. (e)(1).) The heirs to a person with title of record are also entitled to excess proceeds. (*id.*, subd. (f).) The hearing officer found that no claimant produced a grant deed establishing ownership in themselves or a predecessor and, therefore, no title of record as statutorily required. The 1952 deed of trust and reference to a 1956 reconveyance did not provide the necessary proof, the hearing officer concluded. "[A] deed of trust, although customarily and properly executed only by owners, does not create or bestow any ownership, whether in the grantor, grantee or beneficiary; it is a 'security instrument,' like a mortgage. A reconveyance of a deed of trust similarly establishes no ownership." (Italics omitted.) The assessor's tax records listing Carloss's mother as the property owner and assessing her taxes were also found insufficient proof of title of record. "The assessor's records can be helpful, and the fact that someone is considered an assessee, when combined with some recorded evidence which by itself is ambiguous about whether title was conferred (e.g., a quitclaim deed), can tip the evidentiary scale. However, such records do not themselves constitute 'of record' for purposes of the excess proceeds statute."

The hearing officer's decision is dated September 23, 2013. The decision was mailed to Carloss with a cover letter dated October 17, 2013, indicating that any appeal must be made within 30 days of the date of the notice. A timely appeal was filed on November 6, 2013, when Carloss served notice of appeal upon the clerk of the county board of supervisors. The appeal was resolved by the county administrator who mailed to

3

Carloss's attorney a letter dated December 5, 2013, affirming the decision. Carloss alleges he is "unable to ascertain when such decision was served, as it was accompanied by no proof of service whatsoever." He further alleges "that such notice was served by mail no sooner than December 10, 2013." This action was filed on March 13, 2014.

**Discussion**

1. *Standards governing review of demurrers.*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966.) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.)

"Questions concerning whether an action is barred by the applicable statute of limitations are typically questions of fact." (*Sahadi v. Scheaffer* (2007) 155 Cal.App.4th 704, 713.) " 'A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.' " (*Guardian North Bay, Inc. v. Superior Court* (2001) 94 Cal.App.4th 963, 971-972.)

2. *The county failed to establish the action is time-barred.*

An action to review the decision of the board of supervisors on a claim for excess proceeds from a default tax sale "shall be commenced within 90 days after the date of

4

that decision of the board of supervisors." (§ 4675, subd. (g).) The county contends the date of decision was the date of the county administrator's letter—December 5, 2013— and that the action filed 98 days later—on March 13, 2014—was untimely. Carloss contends the date of decision is the date the letter was mailed, which he alleges was no sooner than December 10, 2013, and that the 90-day statute of limitations was extended five days for service by mail (Code Civ. Proc., § 1013, subd. (a)). Carloss calculates that he had 95 days from December 10, 2013, to file his action, which he met by filing on the 93th day. The court accepted the county's position and ruled the action time-barred, finding "[b]y its clear terms," section 4675, subdivision (g) "begins to run from the date of the decision, not from service of the decision."

We conclude that the 90-day statute begins to run from the date the decision is mailed. The statute states, without elaboration, that an action "to review the decision of the board of supervisors shall be commenced within 90 days after the date of that decision." (§ 4675, subd. (g).) The statute does not specify if the "date of that decision" is the date the decision is written or the date the decision is promulgated, whether by mail or other means. The ambiguity in the statute is clarified by a local regulation, which provides that the decision of the county administrator (acting on behalf of the board of supervisors) "is final and binding after the county administrator's affirmation, modification or rejection of the hearing officer's decision *and it is mailed by the clerk to the parties*." (Alameda County Admin. Code, § 2.116.140, italics added; see § 4675.1 [authorizing adoption of local administrative procedures].)

The county's regulation providing that the decision is not final until mailed is consistent with standards generally applicable to judicial review of written administrative decisions, as provided in Code of Civil Procedure section 1094.6, subdivision (b). (See *Donnellan v. City of Novato* (2001) 86 Cal.App.4th 1097, 1102-1107.) That section provides that a petition challenging a decision of a local agency must be filed no later than 90 days after the date on which the decision becomes final and that "[i]f there is a provision for a written decision or written findings, the decision is final . . . upon the date it is mailed . . . ." Unlike section 4675, subdivision (g), which applies here, Code of Civil

Procedure section 1094.6, subdivision (b) requires that the mailed decision include an affidavit or certificate of mailing and provides that Code of Civil Procedure section 1013, subdivision (a) "does not apply to extend the time, following deposit in the mail of the decision or findings, within which a petition shall be filed." Since these additional provisions are not included in section 4675, subdivision (g), the notice sent to Carloss is not rendered ineffective because of the absence of a certificate of mailing and the extension for service by mail provided by Code of Civil Procedure section 1013, subdivision (a) remains applicable.

Where, as here, a short limitations period applies, proper notice to the affected parties is crucial. (*Donnellan v. City of Novato, supra*, 86 Cal.App.4th at p. 1105.) Carloss alleges the decision was "accompanied by no proof of service whatsoever" and that the letter was mailed "no sooner than December 10, 2013." This allegation does not preclude the possibility that the notice was mailed later than December 10, and the county refers to no judicially noticeable documents (or anything else) that suggests an earlier date of mailing. In all events, using December 10 as the mailing date, the complaint filed 93 days later is within the 90-day period authorized by section 4675, subdivision (g) as extended five days by Code of Civil Procedure section 1013, subdivision (a).

The county argues that we must presume the county administrator's letter was posted on the date it bore (December 5, 2013) based upon the evidentiary presumption that "official duty has been regularly performed." (Evid. Code, § 664.) The presumption is unavailing. Official duty may be regularly performed by writing the letter on one day and mailing it another. The date on the face of a letter "may reasonably suggest that that was the date of its *writing*, [but] it does not establish that the letter . . . [was] *mailed* on that date. Certainly, it is reasonably possible, and often the case, that a letter is not mailed on the date it is written." (*Donnellan v. City of Novato, supra,* at p. 1107.) There is no proof the action is time-barred without proof of when the letter was mailed.

6

3. *The complaint must be treated as a petition for administrative mandamus.*

The single cause of action stated in the complaint is for declaratory relief. Carloss alleges the county denied his claim for excess proceeds from the default tax sale because he "could not provide a deed into parents from the official records of the County of Alameda." He seeks a declaration that he is entitled to the excess proceeds because "a fair and reasonable interpretation" of section 4675 permits "evidence of title other than a grant deed in the chain of title." Carloss alleges, in the alternative, that if section 4675 "is to be interpreted in the manner the county prefers, the statutes violates [his] substantive due process rights" because "such an interpretation would create an unfair, arbitrary and unreasonable result" and "an irrebutable presumption that merely because one is unable to produce a deed . . . that one is not entitled to recover funds that, in all fairness, are the property of the claimant."

As a preliminary matter, Carloss's challenge to the county's administrative ruling is not properly stated as an action for declaratory relief. "It is settled that an action for declaratory relief is not appropriate to review an administrative decision." (*State of California v. Superior Court* (1974) 12 Cal.3d 237, 249.) "A declaratory relief action is an appropriate method for obtaining a declaration that a statute or regulation is facially unconstitutional," but administrative mandamus is "the proper and sole remedy" where a local agency's application of the law is at issue. (*Tejon Real Estate, LLC v. City of Los Angeles* (2014) 223 Cal.App.4th 149, 154-155.) While Carloss argues that section 4675 is facially unconstitutional, his complaint and appeal rest primarily on the contention that the statute, even if constitutional on its face, was interpreted too narrowly by the county when ruling on his claim. The remedy he seeks—"an adjudication that the funds in dispute in this case are the entitlement of plaintiff"—is a remedy available only by overturning the administrative decision. A petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) is the appropriate means for overturning the denial of a claim for excess proceeds from a default tax sale. (See *Azadozy v. Nikoghosian* (2005) 128 Cal.App.4th 1369, 1371 [denial of claim challenged by petition for writ of mandate]; *Mission Valley East, Inc. v. County of Kern* (1981) 120 Cal.App.3d 89, 93 [same].) "As

7

against a general demurrer, however, it is unimportant that plaintiff's pleading was not in form a petition for mandamus or certiorari. All that is required is that plaintiff state facts entitling him to some type of relief, and if a cause of action for mandamus or certiorari has been stated, the general demurrer should have been overruled." (*Boren v. State Personnel Board* (1951) 37 Cal.2d 634, 637; accord *Lee v. Blue Shield of California* (2007) 154 Cal.App.4th 1369, 1378.) Accordingly, we shall consider whether Carloss can state a claim for administrative mandamus. Consideration of that issue requires a review of the law governing default tax sales and the recovery of sale proceeds in excess of the tax liability.

4. *Tax-default sales of real property.*

"The general revenue of a city and county is collected by a tax on all nonexempt real property within the jurisdiction of the taxing agency." (5 Miller & Starr, Cal. Real Estate (3d ed.) § 11:158, p. 11-512.) Under the statute, tax on real property "is a lien against the property assessed." (§ 2187.) If the tax is unpaid, a default is declared and tax-defaulted residential property may be sold after five years of delinquency. (§§ 3351-3352, 3361, subd. (a).) Tax-defaulted property is generally sold at public auction to the highest bidder. (§§ 3691, 3693.) The sale proceeds are used to pay taxes and costs. (§§ 3698.5, 4672, 4672.1, 4672.2, 4673, 4673.1.) Any excess in the sale proceeds is held in a trust fund and "parties of interest" in the property have one year to file a claim for the excess proceeds. (§§ 4674, 4675.) Unclaimed proceeds are transferred to the county general fund. (§ 4674.)

"[P]arties of interest and their order of priority are: [¶] (A) First, lienholders of record prior to the recordation of the tax deed to the purchaser in order of their priority. [¶] (B) Second, any person with title of record to all or any portion of the property prior to recordation of the tax deed to the purchaser." (§ 4675, subd. (e)(1).) If "a person with title of record is deceased at the time of the distribution of the excess proceeds, the heirs may submit [a claim]." (*id.*, subd. (f).) A claim "shall contain any information and proof deemed necessary by the board of supervisors to establish the claimant's rights to all or any portion of the excess proceeds." (*id.*, subd. (d).) A county may instruct claimants to

submit information it deems necessary to evaluate a claim for excess proceeds but may not establish standards of proof in conflict with state law on the entitlement to excess proceeds. (See *City of Riverside v. Inland Empire Patients Health & Wellness Center* (2013) 56 Cal.4th 729, 743 ["local legislation that conflicts with state law is void"].)

5. *A person may establish title of record to tax-defaulted property in the absence of a recorded grant deed.*

When interpreting a statute, "we seek to ' "ascertain the Legislature's intent so as to effectuate the purpose of the law." ' " (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 927.) " ' "We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent." [Citations.] The plain meaning controls if there is no ambiguity in the statutory language. [Citation.] If, however, "the statutory language may reasonably be given more than one interpretation, ' " 'courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.' " ' " ' " (*In re Marriage of Davis* (2015) 61 Cal.4th 846, 851-852.)

At issue here is the provision permitting "any person with title of record" to claim excess proceeds from a tax-default sale. (§ 4675, subd. (e)(1)(B).) " "Title of record" is not defined in the statute or elsewhere in any California code. Title is generally understood to denote ownership or "the legal right to control and dispose of property" (Black's Law Dict. (8th ed. 2004) p. 1522, col. 2) and "title of record" has been variously defined as "title as it appears in the public records after the deed is properly recorded" (*id.* at p. 1523, col. 2 & p. 1524, col. 1) or "[a] title to real estate, evidenced and provable by one or more conveyances or other instruments all of which are duly entered on the public land records" (Black's Law Dict. (5th ed. 1979) p. 1145, col. 2).[3] "Any written

---

[3] "Although not binding, it can be useful to refer to the dictionary definition of a word in attempting to ascertain the meaning of statutory language." (*In re Marriage of Davis, supra,* 61 Cal.4th at p. 852, fn. 1.)

'instrument' that affects the title to or possession of *real property*" may be recorded (5 Miller & Starr, Cal. Real Estate (3rd ed.) § 11:4, p. 11-21), including a grant deed, deed of trust and numerous other instruments (*id.*, § 11:6). While a recorded grant deed may be the best evidence, there is no language in the statute specifying that only a recorded grant deed may establish "title of record."

Given this uncertainty, we turn to extrinsic aids. The clear object of the statute is to protect homeowners who default on taxes from losing the equity in their homes in excess of the amount of their tax liability. The statute was enacted with this specific purpose and was designed to change prior law that distributed all excess proceeds "to the taxing agencies which had had unpaid assessments against the property." (*First Corporation, Inc. v. County of Santa Clara* (1983) 146 Cal.App.3d 841, 844.) Previously, a property owner in default on property taxes lost the property and any right to excess proceeds from its sale. (*Chesney v. Gresham* (1976) 64 Cal.App.3d 120, 131.)

Section 4675 was enacted after "a 74-year-old widow was evicted" from the home she lived in for almost 50 years "because she hadn't paid $493 in back taxes. The home was sold for $7,500 and the county and other local governmental agencies kept all of the money in accordance with existing state law." (Cal. Treasurer-Tax Collector Rep. on Assem. Bill No. 2352 (1975-1976 Reg. Sess.) Dec. 17, 1975, p. 2.) The Legislature found that then-existing law "over-reimburses local agencies for delinquent taxes when the proceeds of sale exceed taxes, interest and penalties" and introduced legislation to ensure that "realized equity in excess of taxes due would be returned to the former owner." (Assem. Com. on Rev. & Tax., Off. of Research, 3d reading analysis of Assem. Bill No. 2352 (1975-1976 Reg. Sess.) as introduced May 22, 1975.) The bill was "designed to insure that no one—whether private or a public agency—will receive a windfall profit from the sale of tax deeded property. It sets forth an equitable procedure for settling obligations in the event of a tax sale." (Sen. Com. on Rev. & Tax., Rep. on Assem. Bill No. 2352 (1975-1976 Reg. Sess.) as amended Mar. 22, 1976, mem. of Assemblyman Eugene Gualco.)

10

When first introduced, the bill provided that excess proceeds could be claimed by "the former owner of the property or his successor in interest." (Assem. Bill No. 2352 (1975-1976 Reg. Sess.) § 5, as introduced May 22, 1975.) The bill was amended to allow claims by "parties of interest," defined to include lienholders and "[a]ny person who would be established with title to all or any portion of the property . . . immediately prior to the sale by the state." (Stats. 1976, ch. 113, § 6, p. 177; Sen. Amend. to Assem. Bill No. 2352 (1975-1976 Reg. Sess.) §§ 5-6, Feb. 17, 1976.) The change from "former owner" to a "person who would be established with title . . . immediately prior to the sale by the state" was made to settle a concern that the state itself might be considered a former owner because tax-defaulted property was sold and deeded to the state under then-existing law.[4] (Chairman Legis. Comm. County Tax Collectors Assn. of Cal., letter to Assemblyman Eugene Gualco, Nov. 28, 1975.) "[C]larification" was needed so the state could not claim excess sale proceeds. (*Ibid.*) The bill was amended to allow claims by a "person that would be established with title . . . immediately prior to the sale by the state" rather than a "former owner" "[t]o define in more specific language former owner and successor in interest as the present wording in the bill appears to give the excess funds to the State of California." (Cal. Treasurer-Tax Collector Rep. on Assem. Bill No. 2352, *supra*, p. 1.) Following amendment, legislative and executive reports continued to summarize the law as one providing excess proceeds to the "former owner." (Sen. Com. on Revenue and Taxation, Rep. on Assem. Bill No. 2352. *supra*, as amended Mar. 22, 1976; Governor's Legis. Sect., Enrolled Bill mem. on Assem. Bill No. 2352 (1975-1976 Reg. Sess.) Apr. 21, 1976.)

---

[4] "[T]he property was sold to the State by operation of law following the owner's failure to pay the property tax, and became 'tax-sold property.' [Citation.]. This designation['s] . . . primary effect was to commence the running of a five-year redemption period during which the owner could redeem the property [Citations.] Following the expiration of the five-year redemption period and the publication and mailing of the tax collector's notice of intent to deed the property to the State, the tax-sold property became 'tax-deeded' to the State." (*Craland, Inc. v. State of California* (1989) 214 Cal.App.3d 1400, 1403.)

Section 4675 was revised years later to bring it into conformity with other changes in the Revenue and Taxation Code. In 1984, tax default sale procedures were changed from the earlier practice of sales to the state to the current practice outlined above, in which tax-defaulted property is sold directly to a private party at auction. (*Craland, Inc., supra,* 214 Cal.App.3d at pp. 1403-1404.) In 1985, the Revenue and Taxation Code was revised to make it consistent with the newly adopted procedures. A single bill amended almost 100 sections of the code. (Stats. 1985, ch. 316, §§ 1-94, pp. 1371-1402.) The primary purpose of the revision was to "change obsolete references to 'tax-sold property' and 'tax-deeded property' to 'tax-defaulted property,' and . . . make additional conforming changes in various additional provisions dealing with procedures governing the enforcement of tax-defaulted property." (Legis. Counsel's Dig., Assem. Bill No. 634 (1985-1986 Reg. Sess.) Stats. 1985, Summary Dig. p. 100.) A secondary purpose was to "validate acts and proceedings taken by local taxing agencies" in implementing the law (*ibid.*) by, for example, allowing default sales to proceed despite "minor administrative errors, omissions or inconsistencies" in the notice of sale (Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Assem. Bill No. 634 (1985-1986 Reg. Sess.) as amended May 8, 1985, p. 2). In proposing the legislation, the Office of State Controller wrote that "[t]he material is non-substantive and is intended to complete the revisions" to sale procedures enacted the previous year. (Glenn Engle, Off. of State Controller, mem. to Assemblyman Thomas M. Hannigan, Jan. 25, 1985.)

The 1985 statute amended the definition in section 4675 of parties of interest, who are entitled to claim excess proceeds from a tax default sale, to read as it does today. (Stats. 1985, ch. 316, § 71, pp. 1393-1394.) The purpose of this particular amendment coincides with the purpose of the legislation as a whole – to bring section 4675 into conformity with newly enacted sale procedures in which tax defaulted property was no longer acquired and sold by the state. The record is silent as to any additional purpose.

When read in the context of its legislative history, it is clear that the reference in section 4675 to "title of record" was not intended to restrict the class of claimants to those who can produce a recorded grant deed. The statute was enacted in response to a situation

12

much like the one here—a long-time homeowner losing her home because of a tax delinquency less than her equity in the home. The statute was designed to ensure that "realized equity in excess of taxes due would be returned to the former owner." (Com. on Rev. & Tax., Assem. Off. of Research, 3d reading analysis of Assem. Bill No. 2352, *supra*, as introduced May 22, 1975.) As the above history indicates, the evolution of "former owner" in the legislation as it was originally proposed in 1976 to the language in the current version of section 4675, "person with title of record," was engendered only by concerns with technical consistency. There is no indication of any intention to preclude a former homeowner who cannot produce a recorded grant deed from recovering the realized excess equity in the home so long as that person proves that he or she was in fact the former owner. "Title of record" must be proven, and a recorded grant deed will most often be the best and simplest form of evidence to establish that fact. But when for some reason the grant deed cannot be produced, that proof may consist of recorded instruments of various types, the assessor's records, and testimony that, as a whole, establishes that the claimant or the claimant's predecessor in interest held title of record immediately prior to the tax-default sale.

The county argues that the 1985 amendment of section 4675 changing those entitled to excess proceeds from "any person who would be established with title" to "any person with title of record" must have been meant to narrow the class of claimants to persons with clear title of record, i.e. a recorded grant deed. The county relies heavily on *Azadozy v. Nikoghosian, supra,* 128 Cal.App.4th 1369. In *Azadozy*, a deed was never recorded for real property purchased at a trustee's sale. (*Id.* at p. 1371.) The property was subsequently sold for unpaid taxes and the owner denied recovery of the excess sale proceeds. (*Ibid.*) The claimant had no title of record, as it was "undisputed that she did not record her title" by recording the deed or any other instrument. (*Id.* at p. 1373.) Here, in contrast, Carloss alleges that his predecessor recorded a deed but the deed cannot be located and he seeks to prove title of record by recourse to other recorded instruments, including a deed of trust, and additional evidence.

The factual distinction notwithstanding, the county finds support for its position in the court's reasoning in *Azadozy:* "the statute was amended in 1985 to read as it presently does, i.e. to limit title holder 'parties of interest' to holders of 'title of record.' (Stats. 1985, ch. 316, § 71, pp. 1393-1394.) The Legislature presumably meant what it said. Indeed, this change appears to have been the very purpose of the 1985 amendment to the statute." (*Azadozy v. Nikoghosian*, *supra*, 128 Cal.App.4th at p. 1374 ) The *Azadozy* court's assumption as to what the Legislature "presumably meant," however, was not founded on a review of legislative history. As demonstrated above, the purpose of the 1985 amendment was to conform the language of section 4675, and numerous other provisions, to newly adopted procedures for sales of tax-defaulted property. (Legis. Counsel's Dig., Assem. Bill No. 634 (1985-1986 Reg. Sess.) Stats 1985, Summary Dig. p. 100.) The legislation was "non-substantive" and "intended to complete the revisions" to sale procedures enacted the previous year. (Glenn Engle, Off. of State Controller, mem. to Assemblyman Thomas M. Hannigan, Jan. 25, 1985.) Tax-defaulted property was no longer acquired and sold by the state, necessitating amendment of section 4675 to change claimants to excess proceeds from "any person who would be established with title to all or any portion of the property *sold by the state* by redemption of such property immediately *prior to the sale by the state*" (Stats. 1976, ch. 113, § 6, p. 177, italics added) to "any person with title of record to all or any portion of the property *prior to the recordation of the tax deed to the purchaser*." (Stats. 1985, ch. 316, § 71, p. 1394, italics added). The change in the opening clause from "any person who would be established with title" to "any person with title of record" was a collateral change unremarked in the legislative history. There is no indication of any intention to narrow the class of claimants entitled to excess proceeds to those who can produce a recorded grant deed.

The stated intention of section 4675, as originally enacted, was to ensure that "realized equity in excess of taxes due would be returned to the former owner." (Com. of Rev. & Tax., Assem. Off. of Research, 3d reading analysis of Assem. Bill No. 2352, *supra*, as introduced May 22, 1975.) The 1985 amendment sought only to "change obsolete references to 'tax-sold property' and 'tax-deeded property' to 'tax-defaulted

14

property,' and . . . make additional conforming changes in various additional provisions dealing with procedures governing the enforcement of tax-defaulted property." (Legis. Counsel's Dig., Assem. Bill No. 634, *supra*, Summary Dig., p. 100.) Section 4675 was and remains a provision designed to ensure that public agencies will not "receive a windfall profit from the sale of tax deeded property." (Sen. Com. on Rev. & Tax., Rep. on Assem. Bill No. 2352, *supra*, as amended Mar. 22, 1976, mem. of Assemblyman Eugene Gualco).)

Because, as we have concluded, title of record may be established in the absence of a recorded grant deed, the allegations in Carloss's complaint adequately state a claim for relief by a petition for writ of administrative mandate. (Code Civ. Proc., § 1094.5, subds. (b) & (c).) According to the pleading, the county applied an incorrect standard in denying his application for recovery of the excess tax-sale proceeds based solely on the failure to produce the recorded grant deed. "The inquiry for the issuance of a writ of administrative mandamus is whether the agency in question prejudicially abused its discretion; that is, whether the agency action was arbitrary, capricious, in excess of its jurisdiction, entirely lacking in evidentiary support, or without reasonable or rational basis as a matter of law. [Citations.] A prejudicial abuse of discretion is established if the agency has not proceeded in a manner required by law, if its decision is not supported by findings, or if its findings are not supported by substantial evidence in the record." (*Sierra Club v. County of Napa* (2004) 121 Cal.App.4th 1490, 1497.) We shall reverse the judgment to permit further proceedings consistent with this opinion.

**Disposition**

The judgment is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. Appellant shall recover costs incurred on appeal upon timely application in the trial court. (Cal. Rules of Court, rule 8.278(c).)

_____
Pollak, Acting P.J.

We concur:


_____
Siggins, J.


_____
Jenkins, J.


A143531

16

Trial Court:                              The Superior Court of Alameda County

Trial Judge:                             Honorable Delbert C. Gee

Counsel for plaintiff and appellant:      PETTERSEN & BARK
                                          William D. Pettersen


Counsel for defendant and respondent:     Donna Raylene Ziegler, County Counsel
                                          Farand Kan, Deputy County Counsel
                                          Olivia C. White, Associate County Counsel

A143531