Filed 5/31/19; Certified for Publication 6/24/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| COUNTY OF SONOMA,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>MARK GUSTELY,<br><br>        Defendant and Respondent. | A153423<br><br>(Sonoma County<br>Super. Ct. No. SCV-260814) |

Respondent Mark Gustely failed to comply with an administrative order finding various violations of county codes on his property and ordering him to abate the violations and pay abatement costs and civil penalties. When the County of Sonoma (County) filed an action in the superior court to enforce the codes, enjoin further violations and recover penalties, costs and attorney fees, respondent did not file a responsive pleading and the court entered a default judgment in favor of the County. The judgment, however, ordered penalties significantly lower than the amount ordered by the administrative hearing officer. The sole issue on appeal is the propriety of this reduced penalty assessment. As we will explain, this provision of the court's order, which alters a final administrative order, was entirely unexplained and provides respondent with a windfall he did not request, cannot be sustained. Accordingly, we will reverse the court's order imposing civil penalties at the rate of $20 per day, direct the court to modify its judgment to require payment of such penalties at the rate of $45 per day, and otherwise affirm the judgment.

1

**BACKGROUND**

January 13, 2017,[1] an engineer from the County's Permit and Resource Management Department (PRMD) inspected respondent's property and observed inadequate and unpermitted retaining walls, one of which directed water to a single point directly above a failed 25-foot bank that had deposited five cubic yards of earth onto Riverview Drive.[2] The inspector also observed unpermitted grading and terracing that contributed to bank failure and deposit of material into a nearby water course. On January 19, a rainstorm resulted in slope failure at the property, causing a "four-foot high 'wall of mud' " to "slid[e] onto Riverview Drive blocking ingress and egress for vehicles on the roadway." Respondent moved earthen materials from the road to two locations, one resulting in runoff of materials into a local stream and the other on neighboring private property. Respondent believed his actions either did not require permits or were emergency measures to mitigate damage from impending rains.

On January 26, the PRMD sent respondent four separate notices and orders regarding the unpermitted retaining walls, unlawful grading that was "not performed pursuant to grading standards," "unlawful movement of earthen material within a county owned right-of-way," and unlawful deposit of material in a watercourse. The first three notices required respondent to apply for the applicable permits within a specified timeframe, and the fourth required him to immediately install and maintain "Best Management Practices" to prevent future soil discharge. The notices were subsequently posted on the property.

On January 26, respondent informed PRMD that he had engaged in additional excavation and earth movement within a county right-of-way to investigate alleged violations by his neighbor. PRMD determined that respondent's activities required an encroachment permit and sent a notice of violation.

---

[1] All dates referred to in this opinion are in the year 2017.

[2] The facts are taken from the complaint and the administrative decision.

2

Respondent informed PRMD that he wanted to appeal the violation determinations and an administrative hearing was held on March 31, at which respondent appeared, testified under oath and submitted documents, as did County code enforcement inspectors and engineers. The administrative hearing officer issued and served her 14-page decision on May 15, finding that respondent violated specified sections of the Sonoma County Code (SCC or code) by failing to obtain required permits for construction of the retaining walls; employing inadequate grading and slope protection safeguards that failed to prevent erosion and discharge of soil from the property during rain events; failing to obtain required encroachment permits for work done on a county right-of-way; and depositing material into a county watercourse due to inadequate use of best management practices during the rainy season (with respect to grading and retaining walls) that resulted in slope failure, erosion and discharge of soil from the property.

Pursuant to section 1-7.1 of the SCC, the hearing officer imposed civil penalties of $45 per day for each day the violations existed from the date of the County's notice through the date of the hearing, a total of $2,880.00. The hearing officer further order respondent to pay a total of $8,476.79 in abatement costs. Respondent was ordered to submit a complete building and encroachment permit application package within 30 days and to diligently pursue the permit process with specified deadlines for responding to requests for correction or modification of plans, paying fees, obtaining necessary permits and obtaining final approval of the permits. The order specified that penalties would accrue at a rate of $45 per day from the date of the hearing until the violations were abated.

Respondent did not seek judicial review of the administrative order.

On May 30, a PRMD code enforcement inspector observed additional unpermitted grading to construct a driveway on the property, including encroachment onto the County's right-of-way, as well as an illegal trailer on the property in violation of zoning regulations.

On June 9, the County filed a "Complaint to Enforce Sonoma County Building, Grading and Encroachment Codes; to Abate a Public Nuisance and for Injunctive Relief,"

3

seeking to compel abatement of "an imminent threat to public health and safety" that respondent had created by "erecting and constructing inadequate retaining walls without a permit; conducting unpermitted and uninspected grading of roads and terraces; conducting unpermitted encroachment work within the County right-of-way; and causing the deposit of materials into a county creek." These code violations were alleged to have created "dangerous and substandard conditions that have resulted, and will continue to result, in landslides onto the County right-of-way as well as onto adjacent private property." The complaint stated that after an evidentiary hearing the hearing officer issued an order upholding all the violations and awarding the County penalties and abatement costs, but respondent continued to illegally grade the property, maintain an unpermitted and inadequate retaining wall, excavate in the County right-of-way and create erosion onto Riverview Drive and adjacent private property. The County alleged causes of action for violation of grading standards, violation of the building code, encroachment onto a county right-of-way, public nuisance and injunctive relief, and sought relief including orders requiring respondent to immediately cease unpermitted work on the property, abate the code violations, and pay penalties pursuant to the SCC, as well as costs and attorney fees, and orders authorizing the County to take actions necessary to abate the violations in the event respondent failed to do so.

On June 11, an inspector observed that the unpermitted grading on the property and County right-of-way had progressed further, the "road/driveway" had been leveled and gravel had been added to smooth the surface of the road/driveway. Two trailers were observed on the property in violation of zoning regulations. Concerned about continuing violations and "escalating hazardous environmental conditions," the County, on June 13, filed an ex parte application for a temporary restraining order (TRO) and order to show cause (OSC), stating that there was a compelling need for emergency judicial review that day because respondent was "actively and aggressively engaged in acts which violate" County building codes, grading and drainage standards, encroachment permit requirements and storm water best management policies, creating an immediate threat to public health and safety, dangerous and hazardous conditions to adjacent property owners

4

and serious environmental degradation. The County's brief stated, among other things, that respondent was acting in disregard of the County's notices of violation and the administrative order, continuing the illegal activities on the property and failing to pay penalties and abatement costs.

The trial court issued an OSC and TRO, ordering respondent to appear for a hearing on June 28.

On June 15, respondent was served with a misdemeanor citation for violating the TRO.

Ahead of the June 28 hearing date, the court issued a tentative ruling granting the application for a preliminary injunction pending trial, finding the County was likely to prevail on the merits based on the administrative hearing officer's decision and the declarations submitted in support of the County's application. Respondent requested oral argument, and on June 28, the court heard witnesses' testimony and argument from respondent and from the County's attorney. The court's order granting the request for a preliminary injunction was filed on July 11.

Respondent did not file any pleading in response to the County's complaint, and the clerk of the superior court entered his default on August 8.

On August 28, the County filed a motion for default judgment and permanent injunction. The County sought recovery of accrued abatement costs and civil penalties pursuant to the SCC and the administrative order, and attorney fees and costs pursuant to the SCC.[3]

The court issued a tentative ruling finding the County had established a prima facie case entitling it to entry of a default judgment and permanent injunction. The court found the County was entitled to damages based on the "Abatement Order already in place" for costs it incurred before the administrative order, but further abatement costs

---

[3] According to the subsequent declaration of a code enforcement manager, as of September 27, 2017, the travel trailer had been removed from the property but penalties were still owed on the violation and other violations on the property had not been abated.

5

could not be awarded in a default judgment because the complaint did not specify the amount sought. (Code Civ. Proc., § 580, subd. (a) [relief granted to plaintiff in default judgment "cannot exceed that demanded in the complaint"]; *Finney v. Gomez* (2003) 111 Cal.App.4th 527, 534.) The ruling awarded $8,392 in attorney fees rather than the $20,852.50 sought by the County, based on the court's determination that 28 hours of time was "more reasonable" than the 69.75 hours claimed. With respect to penalties, the court noted that the abatement order imposed penalties accruing at $45 per day but reduced the amount to $20 per day, for a total of $5,020 in accrued penalties from the date of the notices of violation to the court's ruling.

The County requested argument, which the court heard on October 4, and was permitted to submit supplemental briefing in support of its argument. In its brief, the Country argued that the court lacked discretion to alter the administrative hearing officer's order with respect to the daily penalty rate because the administrative order was final, respondent having failed to file a timely writ petition (Code Civ. Proc., §§ 1094.5, 1094.6) or appeal (Gov. Code, § 53069.4).[4] The County maintained that because the statutes provide no mechanism for judicial review absent such a challenge, the court lacked authority to initiate review of or modify the administrative decision, and that even where judicial review is proper, a court must find error at the administrative hearing to warrant altering the administrative order. Here, the County argued, the court did not explain why modification of the daily penalty rate was appropriate, the hearing officer's score and calculation was supported by the evidence, and the court's reduced daily penalty amount undervalued the severity and impact of the violations.

The default judgment and permanent injunction, filed on November 8, 2017, maintained the penalty amounts stated in the tentative ruling.

---

[4] The County also argued unsuccessfully that the court's "severe" reduction in the amount of attorney fees was unwarranted because the time spent was unavoidable and not unreasonable. The attorney fees award is not at issue on this appeal.

6

## DISCUSSION

The entirety of the court's explanation for its reduction of the penalties from the $45 per day ordered by the administrative hearing officer to $20 per day is as follows:

"The Abatement Order also imposed penalties accruing at $45 per day, [which] the County seeks to add to the default judgment. Based upon the facts of the case as described in plaintiff's moving papers, the court exercises its discretion and reduces the amount of penalties to $20 per day. Therefore, the total amount in monetary penalties awarded is $5,020."

The SCC requires payment of civil penalties for specified code violations, including the ones here, as determined by "the enforcing officer," within a range set in the code, upon consideration of various factors bearing on the seriousness of the violation and culpability of the violator. (Sonoma County Code, §§ 1-7.1, 1-7.3, subd. (c).[5]) Here, the PRMD deputy director for construction employed a "penalty calculation sheet" that lists six factors with a weight assigned to each: seriousness of the code violation (.30), time the violation existed (.05), diligence/cooperation of the violator/owner (.15), effect on other properties (.10), culpability of the violator/owner (.20) and sophistication of the violator owner (.20). In the calculation, each factor is given a score from 1 to 10 based on enumerated criteria: For example, for seriousness of the violation, the sheet calls for a score of one point for minor violations, 5 points for violations that may cause human health/safety or environmental damage and 10 points for violations that have caused such damage; for cooperation of the violator/owner, it specifies one point for "quickly responded & acted w/ diligence," 5 points for "responded after numerous attempts" and 10 points for "delayed response." The multiplier for each factor is applied to its score and the resulting weighted scores are totaled, and the total weighted score is used to determine the daily penalty by reference to a "penalty schedule" that lists penalty

---

[5] The hearing officer's decision cites sections 1-7.1, subdivision (d) of the code, and the County describes that section as setting forth the factors bearing on determination of the amount of penalties. As a result of July 2018 amendments to the code, the factors now appear in section 1-7.3, subdivision (c). (Ordinance No. 6236, § 1, 7-24-2018.)

7

amounts in a grid, with score ranges along one axis and type of violation along the other. The assigned scores in the present case were as follows: seriousness of the code violation, 3 points; time the violation existed, 1 point; diligence/cooperation of the violator/owner, 8 points; effect on other properties, 7 points; culpability of the violator/owner, 10 points; sophistication of the violator owner, 10 points. The resulting total weighted score was 6.85, and the daily penalty for a score of 6.6-7.0 was $45.

The SCC provides that the determination of civil penalties "shall, in the first instance, be performed by the enforcing officer." (Sonoma County Code, § 1-7.3, subd. (c).) The penalties are "subject to modification by the hearing officer," and "[a]dditional penalties shall accrue on a per-day basis at the hearing officer's discretion if the violation is not abated within the period of time specified in the hearing officer decision. (Sonoma County Code, § 1-7.3, subd. (j).) Here, the hearing officer assessed penalties at the daily rate calculated by the PRMD, and ordered that penalties continue to accrue at the same rate, after the hearing, "until a repair or demolition permit is obtained and final PRMD approval of the work is received."

As earlier indicated, respondent did not seek judicial review of the hearing officer's decision. He had two potential means of doing so: A petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5 or an appeal to the superior court pursuant to Government Code section 53069.4.[6] The time to file a petition for writ

---

[6] The SCC specifies that, except as otherwise provided, any petition for review of a county administrative decision must be filed within the time limits prescribed by Code of Civil Procedure section 1094.6. (Sonoma County Code, § 1-7.5, subd. (a).) The code further states that "this section is not intended to alter the alternative procedures for judicial review of an administrative penalty in Government Code Section 53069.4, subdivision (b).)"

Government Code section 53069.4, which authorizes local agencies to make violation of their ordinances subject to an administrative fine or penalty (*id.*, subd. (a)(1)), provides: "(b)(1) Notwithstanding Section 1094.5 or 1094.6 of the Code of Civil Procedure, within 20 days after service of the final administrative order or decision of the local agency is made pursuant to an ordinance enacted in accordance with this section regarding the imposition, enforcement, or collection of the administrative fines or penalties, a person contesting that final administrative order or decision may seek review

of mandate expired 90 days after the administrative hearing officer issued her decision. (Code Civ. Proc., §1094.6, subds. (a), (b); Sonoma County Code, § 1-7.5.)  The time for filing an appeal under Government Code section 53069.4 expired 20 days after service of the administrative order.  (Gov. Code, § 53069.4, subd. (b).)  Having failed to exercise either of these options, respondent had no further avenue for seeking relief from the administrative order.

Even where a party *does* seek review of an administrative order, the scope of that review is limited.  " 'The inquiry for the issuance of a writ of administrative mandamus is whether the agency in question prejudicially abused its discretion; that is, whether the agency action was arbitrary, capricious, in excess of its jurisdiction, entirely lacking in evidentiary support, or without reasonable or rational basis as a matter of law. [Citations.]  A prejudicial abuse of discretion is established if the agency has not proceeded in a manner required by law, if its decision is not supported by findings, or if its findings are not supported by substantial evidence in the record.' "  (*Carloss v. County of Alameda* (2015) 242 Cal.App.4th 116, 132, quoting *Sierra Club v. County of Napa* (2004) 121 Cal.App.4th 1490, 1497.)  "Judicial review of an agency's assessment of a penalty is limited, and the agency's determination will not be disturbed in mandamus proceedings unless there is an arbitrary, capricious or patently abusive exercise of discretion by the agency.  (*Kazensky* [*v. City of Merced* (1998)] 65 Cal.App.4th [44,] 54.)  'Neither a trial court nor an appellate court is free to substitute its discretion for that of an administrative agency concerning the degree of punishment imposed.  [Citations.]' (*California Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal.App.4th 1575, 1580.)"  (*Flippin v. Los Angeles City Bd. of Civil Service Commissioners* (2007) 148 Cal.App.4th 272, 279.)  Furthermore, " '[a]n administrative hearing officer's proposed decision is entitled to great weight *because of* his [or her] *opportunity to observe the witnesses and*

---

by filing an appeal to be heard by the superior court . . . [¶] . . . [¶] (c)  If no notice of appeal of the local agency's final administrative order or decision is filed within the period set forth in this section, the order or decision shall be deemed confirmed."

9

*weigh their testimony in light of their demeanor.*' " (*Absmeier v. Simi Valley Unified School Dist.* (2011) 196 Cal.App.4th 311, 318, quoting *Gore v. Board of Medical Quality Assurance* (1980) 110 Cal.App.3d 184, 190.)

Here, as described above, the PRMD deputy director for construction calculated a daily penalty rate based on consideration of factors enumerated in the SCC. The penalty calculation sheet assigns the heaviest weight to the seriousness of the code violation (.30) and the culpability and sophistication of the violator (.20 each). As indicated on the calculation sheet, culpability refers to the violator's role in the violation: one point where "Violator/Owner did not actively create violation," 5 points where "Violator/Owner created or added to violation," and 10 points where "Violator/Owner had economic incentive/benefit, repeat Violator/Owner or flagrant violation." Sophistication refers to the violator's awareness of the violation: One point for "unknowing of regulations," 5 points for "[p]ossible knowledge of regulations" and 10 points for "[r]egulations were known." The violations in the present case were scored as relatively low in seriousness—at 3 points, in between "[m]inor violations" and "[m]ay cause human health/safety or environmental damage." The scores for culpability and sophistication, however—which together represent 40 percent of the total score by which the daily penalty is determined—were the maximum possible, 10 points each. In other words, in the view of the enforcing officer, respondent knew the regulations he was violating and "had economic incentive/benefit" or committed repeat or flagrant violations. The overall score assigned by the enforcing officer also reflected determinations that respondent was not diligent and cooperative with the PRMD (score of 8) and had more than "some" but less than "significant" effect on other properties (score of 7).

This calculation, which the hearing officer found appropriate after a full hearing at which respondent testified and presented evidence, reflects a careful consideration of both the seriousness of the code violations and respondent's attitude toward the PRMD's efforts to stop them and abate their consequences. The trial court gave no explanation for its decision to reduce the daily penalty amount by more than half. It is thus impossible to know whether the court disagreed with the scores assigned by the enforcing officer and

10

accepted by the hearing officer—and, if so, on what basis—or just picked a number for the daily penalty rate that the court felt better reflected its own sense of the seriousness of the violations.

Putting aside the question whether the court had authority to alter the penalty assessment in an administrative decision that had become final, and assuming the court was exercising its statutory discretion to "render [default] judgment in the plaintiff's favor for that relief, not exceeding the amount stated in the complaint, . . . as appears by the evidence to be just" (Code Civ. Proc., § 585, subd. (b)), the court was not free to simply substitute its view of the appropriate penalty amount for that of the hearing officer. " 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion. [Citation.]' (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297–1298.)" (*Board of Administration v. Wilson* (1997) 57 Cal.App.4th 967, 973.) The SCC directs the determination of penalties to be made "in the first instance" by the enforcing officer, based on specified considerations and subject to modification by the administrative hearing officer. (Sonoma County Code, § 1-7.3, subds. (c), (j).) The hearing officer adopted the enforcing officer's evaluation of the factors bearing on determination of the penalties. Respondent never challenged the administrative order. The court identified no flaw in the process by which the administrative hearing officer determined the daily penalty amount, and the record on appeal provides no indication that determination was unsupported by the evidence. The trial court's reduction of the daily penalty rate in these circumstances was an abuse of discretion.

## DISPOSITION

Paragraph 7 of the judgment shall be modified as follows:

"Pursuant to Sonoma County Code Section 1-7.1, civil penalties per the May 15, 2017, Administrative abatement Order, for the SCC Chapters 7, 11, 15 and 19 violations were assessed as follows: $45 per day beginning on January 26, 2017, up to March 31,

11

2017 = 64 days, for a total award of accrued civil penalties of $2,880. Since defendant failed to abate the violations as set forth in the 2017 Order, additional daily penalties have accrued at the rate of $45 per day from March 31, 2017, up to and including the date of the Hearing on October 4, 2017. (187 days at $45 per day = $8,415.) Thus, total civil penalties currently due are $11,295. ($2,880 + $8,415.)"

The first sentence of paragraph 8 of the judgment shall be modified as follows:

"Within thirty (30) days of Notice of Entry of this Default Judgment, defendant shall pay the County of Sonoma $28,448.00 in total for the amount of the costs, attorneys' fees and penalties as set forth above."

As so modified, the judgment is affirmed.

                                              _____

                                              Kline, P.J.

We concur:

_____

Stewart, J.

_____

Miller, J.

*County of Sonoma v. Gustely* (A153423)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| COUNTY OF SONOMA,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>MARK GUSTELY,<br><br>     Defendant and Respondent. | A153423<br><br>(Sonoma County<br>Super. Ct. No. SCV-260814)<br><br>**ORDER CERTIFYING OPINION<br>FOR PUBLICATION** |

THE COURT:

The opinion in the above-entitled matter filed on May 31, 2019, was not certified for publication in the Official Reports. For good cause, the request for publication by Appellant is granted.

Pursuant to California Rules of Court, rules 8.1105 and 8.1120, the opinion in the above-entitled matter is ordered certified for publication in the official Reports.

Dated: _____            _____

                                                               Kline, P.J.

Trial Court:                                Sonoma County Superior Court

Trial Judge:                              Hon. Rene Aguste Chouteau

Attorneys for Appellant:             Bruce D. Goldstein
                                            Holly E. Rickett
                                            Michael J. Caballero

Respondent Mark Gustely, in pro. per.      No appearance
.